# EMSHEIMER *v.* NEW ORLEANS.

### CERTIFICATE FROM THE UNITED STATES CIRCUIT COURT OF APPEALS FOR THE FIFTH CIRCUIT.

No. 347.   Argued March 19, 20, 1902.—Decided May 19, 1902.

A certificate under section six of the act of 1891 should contain a proper statement of the facts on which the question or proposition of law arises.

The entire record should not be transmitted and a decision asked on the whole case.

The inquiry as to the jurisdiction of the Circuit Court of suits to recover the contents of choses in action relates, so far as the assignors are concerned, to the time when the suit is brought.

If at that time the assignors could have brought suit in the Circuit Court, it is immaterial whether they could have done so when the assignment was made.

THE certificate in this case is as follows :

" This suit was commenced by filing in the Circuit Court the following bill and exhibit, filed November 13, 1899 :

" ' To the honorable the Judges of the Circuit Court of the United States for the Fifth Circuit and Eastern District of Louisiana, New Orleans division :

" ' Alphonse Emsheimer, of New Orleans, an alien and a subject of the Empire of Germany, brings this his bill against the city of New Orleans, a municipal corporation created by the laws of Louisiana, and a citizen of said State.   And thereupon your orator complains and says :

" ' 1st.  That by an act of the legislature of Louisiana (No. 74), approved September 14th, 1868, the parishes of Orleans, Jefferson and St. Bernard were territorially united in one district for the purpose of police government therein, called the ' Metropolitan police district of New Orleans, State of Louisiana ;' that the government of said district for police purposes was vested in a board of commissioners, styled ' the board of Metropolitan police.'

" ' 2d.  That said board was required to appoint all the officers

and employés of the police force required in said district, and their salaries (which were prescribed by the act) were required to be paid monthly; that by said act and acts of said legislature, supplementary to and amendatory thereof, said board was required to make annually an estimate of the expenses of maintaining a police force in said district, and to apportion the same to the several cities and parishes within said district, and said cities and parishes were required by said acts to promptly pay, and to provide the means for promptly paying, the amounts thus apportioned to them.

"'3d. That said city of New Orleans was a municipal corporation created by the laws of said State of Louisiana, and was within said Metropolitan police district; that said board from and after its creation, as aforesaid, annually made the estimate of expenses of maintaining said Metropolitan police and apportioned the same to said several cities and parishes as required by said acts.

"'4th. That the apportionments made by said board aforesaid to the city of New Orleans for all the years from 1869 to 1876, inclusively, amounted to the sum of $6,033,030.51, and when said apportionments were made and notified, as they were to said city, she became liable to said board of Metropolitan police for the amount thereof.

"'5th. That like apportionments of police expenses were made by said board to the cities of Jefferson and Carrollton, which were within said police district, for which apportionments they each became liable to said board, but afterwards by acts of said legislature, said cities were consolidated with said city of New Orleans, which by said acts of consolidation was made liable for their debts, including those created for their apportionment of police expenses aforesaid.

"'Your orator has not sufficient information to state the amount of the liabilities thus created and imposed upon said city of New Orleans, but avers upon information and belief, that it was sufficient to pay and discharge the proportion of police expenses due by each of said cities.

"'6th. That like apportionments were made by said board of police expenses to be paid by said parishes of Jefferson and

St. Bernard and the city of Kenner, all within said police district, and notice given to each of said corporations thereof, as required by law, and thereupon they became and were absolutely liable to said board for the amount of their respective apportionments; but what the amounts of said apportionments were complainant is unable to state, but avers that they were sufficient to meet the annual police expenses within their respective jurisdictions.

"'7th. That while said cities and parishes within the police district were required to promptly pay and to provide the means for promptly paying their respective apportionments, the councils of said cities and the police juries of said parishes were authorized to raise the amount required for that purpose by levying taxes upon the persons and things subject to taxation within their respective jurisdictions, and for that purpose did severally make such levies, and your orator avers that said city of New Orleans annually, during the whole period of the existence of said board, included in her budget of expenditures the amount thus apportioned to her, and in pursuance of said authority levied and collected taxes for the purpose of paying the same, and paid upon account thereof large sums of money, but not enough to discharge her liability in the premises, there still being due upon account thereof, including Carrollton, the sum of two hundred and forty-one thousand, one hundred and six and $\frac{54}{100}$ dollars ($241,106.54,) and the defendant, the present city of New Orleans, successor of said city, as existing at the time said apportionments were made, is liable therefor.

"'8th. And your orator avers that said city of New Orleans was and is a statutory trustee of the money derived from such taxation, and collected by her for the purpose of paying said apportionments of police expenses; that ever since said several levies of such taxes said city has been, and still is making collections thereof, and has collected large sums of money on account thereof, for which she has failed to account and still holds subject to said trust, the amount thereof being to your orator unknown; that for a portion of such collections a receiver was appointed by the civil district court for the parish of Orleans with the consent of said city, to whom said city on July 25th,

1888, paid the sum of thirty thousand nine hundred and forty-four $\frac{94}{100}$ dollars ($30,944.94) part and parcel of the moneys derived from the collection of such taxes as well as other small sums thereafter, the amount and date of payment of which is to your orator unknown.

" ' And your orator avers that afterwards, to wit, on the 27th of December, 1890, said receiver died, and that said board has been since then, and is now without any successor or representative, and its affairs are under no administration whatsoever; that said city of New Orleans has since the death of said receiver continued to collect said police taxes, and is still collecting the same, the amount of such collections being to your orator unknown, but he avers that it is a large amount, no part of which she has applied to the payment of any of her indebtedness on account of said apportionments; and that she holds the same subject to said trust as above averred.

" ' And your orator avers that large amounts of said police taxes levied, as aforesaid, became delinquent, and thereafter interest accrued thereon at the rate of ten per cent per annum; that said city of New Orleans collected large amounts of such interest, which as accessory to said taxes should have been paid to said police board, but which she neglected and refused in violation of her duty as trustee, to apply to the payment of said apportionments, and she should be required to account for the same with interest thereon; that the amount of police taxes as well as the interest thereon, so as aforesaid collected, is unknown to your orator, and he is entitled to an account thereof from said city before one of the masters of this honorable court, or otherwise, as your honors may direct.

" ' 9th. That said board of Metropolitan police, in obedience to the laws creating and governing the same, organized a Metropolitan police force in said district and maintained the same until March 31st, 1877, when said act No. 74 of September 14th, 1868, establishing said Metropolitan police district, as well as all other acts amendatory thereof and upon the same subject-matter, were repealed, and said board of Metropolitan police was abolished without any provision being made for the liquidation of its affairs, or the payment of its debts.

"'10th. That said board of Metropolitan police was a body corporate under the laws of its creation, and by the repeal of said law, ceased to be and had and has no representative or successor against whom suit might have been or may now be brought for the establishment of the demands of the complainant herein, and he is remediless, except in this honorable court, where matters of this nature are cognizable and relievable, wherefore he brings this his bill, in behalf of himself and all other creditors of said board, similarly situated, who may come in and contribute to the expense of this suit.

"'11th. That one Lew Goldstein, as holder of a large amount of Metropolitan police warrants, issued to officers and members of the Metropolitan police, and assignee of sundry creditors of said board of Metropolitan police, on the 21st of October, 1886, brought suit in the 26th judicial district court in and for the parish of Jefferson, Louisiana, against said city of New Orleans, said city of Kenner and said parishes of Jefferson and St. Bernard, in behalf of himself and all other creditors of said board, similarly situated, praying the appointment of a receiver and enforcement of the liabilities of said several defendants, for the purpose of paying and discharging the obligations of said board ; that citation was served on the 26th of October, 1886, upon each of said defendants to appear and answer in said suit, and afterwards said suit was removed into this honorable court, where holders of warrants and claims against said board, amounting to a much larger sum, appeared before the master appointed by the order of the court, and proved their demand, the claims now held by your orator being among those so presented and proved, as will appear by said master's report now on file, which is here referred to for greater certainty ; that the case as against the city of New Orleans was afterwards dismissed upon the ground that this court had not acquired jurisdiction thereof; but as to all other defendants the same still remains pending and undisposed of.

"'That afterwards, to wit: February 9th, 1891, Henry W. Benjamin exhibited and filed his bill of complaint in this honorable court against said city of New Orleans and others for an account of the sums due by said defendants, applicable to the

payment of the certificates and claims against said police board held by him, being the same claims upon which said Goldstein brought suit as aforesaid, and which said Benjamin had acquired; that various persons having like claims against said police board intervened in said suit and proved the same before the master therein ; that among said claims sued upon by said Benjamin and said intervenors, were included the obligations and claims since acquired and now held and owned by your orator, hereinafter enumerated and described; that process of subpœna in said case was duly served upon said city of New Orleans February 9th, 1891, that she afterwards appeared and answered and a final decree was made against her in favor of said complainant, and the intervenors therein establishing their claims and decreeing the said city to pay the same, which suit was afterwards dismissed for want of jurisdiction in this honorable court, but without prejudice to a new bill, which decree became final January 31st, 1898.

"'12th. That your orator is the holder and owner of certificates issued by said board of Metropolitan police in acknowledgment of its indebtedness for services rendered to it by the persons therein named and of transfers of debts due by said police board, amounting to three thousand, thirty and fortyeight / 100 dollars ($3030.48), a list whereof is hereto annexed as Exhibit 'A,' and made a part of this bill; that said claims have been duly assigned and transferred to your orator for a valuable consideration, and he is now the holder and owner thereof.

"' And your orator avers that each of said persons in whose favor said claims accrued, and to whom said certificates were issued, or their heirs or legal representatives, are citizens respectively of States other than Louisiana, and competent as such citizens to maintain suit in this honorable court against said defendant for the enforcement of said indebtedness, represented by said certificates and transfers, if no assignment or transfer thereof had been made, the citizenship of said persons being as follows, viz. :

"' Said D. M. Moore is a citizen of the State of New York.

" Eli Jones is a citizen of the State of Texas.

" ' Said Peter Joseph is a citizen of the State of Colorado.

" Robert Crofton is a citizen of the State of Mississippi.

" W. C. Bodechtel is a citizen of the State of California.

" J. H. Moore is a citizen of the State of Colorado.

" Edward Masterson is a citizen of the State of Ohio.

" John Dinan is a citizen of the State of Ohio.

" F. Coleman is a citizen of the State of Ohio.

" R. H. Taylor is a citizen of the State of Illinois.

" W. H. Murphy is a citizen of the State of Michigan.

" ' Said G. H. Hamersley resided in and was a citizen of the State of California, until he died recently, leaving two sons, G. H. Hamersley and —— Hamersley, as his sole heirs, who are also citizens of the State of California.

" ' Said Dr. J. B. Cooper resided in and was also a citizen of the State of California, where he died leaving Mrs. Catherine E. Cooper, his widow in community, as sole heir under the laws of said State of which she is a citizen.

" " ' 15th. And your orator further shows and avers that there are now outstanding, due and unpaid, other warrants and certificates issued by said board of Metropolitan police, and sums due and owing by it, for services rendered and supplies furnished thereto, amounting to a large sum, the exact amount thereof being unknown to your orator, but he avers upon information and belief, that including interest thereof, the amount exceeds two hundred thousand dollars ($200,000); that the only assets of said board of Metropolitan police, at the time it was abolished, were the amounts due to it by the said city of New Orleans, and by other municipal corporations within said police district; that the amount due by said city as aforesaid, is applicable to the payment of the claims held and owned by your orator as aforesaid, the same being for services rendered within said city, and that he is entitled to an accounting by said city, in order that the amount due by her may be ascertained and fixed and decreed to be paid, and applied to the payment of your orator's claims, and of such others as shall join herein and contribute to the expense of this suit.

" ' In consideration whereof and inasmuch as your orator has not a complete and adequate remedy at law to the end there-

fore that the said defendant may, if she can, show why your orator should not have the relief hereby prayed, and that she may full, true and perfect answer make to all and singular the premises, (but not under oath, the oath thereto being expressly waived); that an account be taken before a master to be appointed by the court, of the amount of taxes collected by the defendant on account of the assessments and levies of taxes for police purposes, as set forth in the bill, and of the amounts due by the defendant on account of the apportionments aforesaid due by her, and that the defendant may be decreed to pay into the hands of a receiver, the amount of said taxes collected, with interest thereon, since the same have come into the hands of the defendant, and a sufficient amount of the said apportionments as trust funds, to meet the demands of the complainant and other creditors similarly situated who may come into this cause and take the benefit of these proceedings, and all expenses and costs; and that the same be applied to their payment.'"

[Then followed prayer for process and for general relief and signatures of counsel; also Exhibit " A," " List of certificates of indebtedness of Board of Metropolitan Police and claims against it held and owned by said complainant." These were in small amounts, some of them dated in October, November and December, 1874, some in December, 1875, and some in November and December, 1876. The original payees were D. M. Moore, Eli Jones, Peter Joseph, Robert Crofton, W. C. Bodechtel, Edward Masterson, R. H. Taylor, John Dinan, G. H. Hamersley, W. H. Murphy, F. Coleman and Dr. J. B. Cooper.

The city demurred to the bill on the ground that the Circuit Court had no jurisdiction as such for want of proper averments of diverse citizenship; that necessary parties were lacking; that plaintiff had not stated a case entitling him to the relief prayed; and that the remedy was at law and not in equity. On hearing the Circuit Court entered the following decree :]

"'This cause came on to be heard at a former day upon the demurrer to the bill, filed by defendant, and after arguments from counsel, was submitted.

" ' On consideration thereof for the reasons on file :

" ' It is ordered that the defendant's first ground of demurrer be and the same is hereby overruled, the court finding and decreeing that the allegations of the citizenship of the complainant, of the original payees and of the city of New Orleans, are fully sufficient.

" ' It is further ordered that defendant's third and fourth grounds of demurrer are hereby sustained, the court finding and decreeing that there is no equity in the bill of complaint herein and said bill is therefore dismissed for want of equity with full reservation of complainant's right to sue and proceed at law.'

" The complainant below prosecuted an appeal to this court and assigns herein errors as follows :

" ' 1st. Said Circuit Court erred in sustaining the demurrer to the complainant's bill, and in dismissing the same.

" ' 2d. Said court erred in holding that complainant's bill does not state a case within the jurisdiction of a court of equity.

" ' Wherefore, for the errors assigned, and others manifest in the record, said complainant prays that said decree be reversed and said cause reinstated to be proceeded with according to law.'

" And now at this term this cause came on to be heard on the transcript and was argued,—

" Whereupon, for the proper decision of the case, this court, desiring the instruction of the honorable, the Supreme Court of the United States, certifies to that court the following questions and propositions of law arising on the record, to wit: 1. This being a suit brought by an assignee to recover the contents of choses in action, does the bill state sufficient facts to give the court jurisdiction on the ground of diverse citizenship ? 2. Under the facts stated in the bill and under the proper construction of Act No. 35 of the Laws of Louisiana, approved March 31, 1877, can the city of New Orleans, as a legal successor of the defunct Metropolitan Police Board, be held liable to the complainant as the holder of valid outstanding certificates of indebtedness issued by the late board of

Metropolitan police for the amounts due on said certificates?
3. Under the facts stated in the bill, can the complainant maintain a suit in equity in the Circuit Court of the United States
for the Eastern District of Louisiana against the city of New
Orleans for the establishment of a fund out of which he in
common with other creditors of the late Metropolitan Police
Board may be paid *pro rata* upon their claims?"

*Mr. J. D. Rouse* for appellant. *Mr. William Grant* was on
his brief.

*Mr. Frank B. Thomas* for appellee. *Mr. Samuel L. Gilmore* was on his brief.

MR. CHIEF JUSTICE FULLER delivered the opinion of the court.

This is a certificate under section six of the Judiciary Act
of March 3, 1891, 26 Stat. 826, c. 517, and it is settled as to
such certification that each question propounded must be a definite point or proposition of law clearly stated, so that it can be
definitely answered without regard to other issues of law in the
case; that each question must be a question of law only and
not of fact, or of mixed law and fact; and that the certificate
cannot embrace the whole case, even where its decision turns
on matter of law only and even though it be split up in the
form of questions. *Graver* v. *Faurot*, 162 U. S. 435; *McKeen*
v. *Railroad Company*, 149 U. S. 249.

Rule 37 provides: "Where, under section six of the said act,
a Circuit Court of Appeals shall certify to this court a question
or proposition of law, concerning which it desires the instruction of this court for its proper decision, the certificate shall
contain a proper statement of the facts on which such question
or proposition of law arises." In this case there is no such statement, but the entire record is certified, and the questions contemplate an examination of the whole case and in large part its
decision on the merits.

We cannot regard this certificate as in compliance with the
rule, and are constrained to decline to answer the second and

third questions, but we think we may properly answer the first question in view of the narrow limits by which it was apparently intended to be circumscribed.

The judicial power extends to controversies between citizens of different States ; and between citizens of a State and citizens or subjects of foreign States ; but the Judiciary Act of September 24, 1789, provided that the District and Circuit Courts of the United States should not "have cognizance of any suit to recover the contents of any promissory note or other chose in action in favor of an assignee, unless the suit might have been prosecuted in such court to recover the said contents if no assignment had been made, except in cases of foreign bills of exchange," 1 Stat. 78, c. 20, § 11 ; and the same provision of the act of March 3, 1887, as corrected by that of August 13, 1888, is in these words : " Nor shall any Circuit or District Court have cognizance of any suit, except upon foreign bills of exchange, to recover the contents of any promissory note or other chose in action in favor of any assignee, or of any subsequent holder if such instrument be payable to bearer and be not made by any corporation, unless such suit might have been prosecuted in such court to recover the said contents if no assignment or transfer had been made." 25 Stat. 433–4, c. 866, § 1.

To prevent abuse of the constitutional right to resort to the Federal courts, jurisdiction in respect of assignees or transferees was thereby denied except as to suits upon foreign bills of exchange ; suits upon choses in action payable to bearer and made by a corporation ; and suits that might have been prosecuted in such court to recover the said contents if no assignment or transfer had been made. *New Orleans* v. *Quinlan,* 173 U. S. 191.

The bill shows that at the time this suit was brought the Circuit Court had jurisdiction as between plaintiff and defendant, and also that the payees of these warrants might themselves then have instituted it, if there had been no assignment or transfer. We lay out of view as inapplicable the limitation on amount prescribed as to parties plaintiff by another clause with a different purpose.

But it is objected that the restriction relates to the time when

the paper was assigned, and not to the time of the commencement of the suit; and that if there were intermediate assignees jurisdiction in respect of them must appear, and does not appear on the face of this bill.

We are of opinion that the inquiry is to be determined as of the date when the suit is commenced. Jurisdiction vests then and cannot be divested by subsequent change of residence; but jurisdiction cannot be held to have vested prior to action brought. There have been many decisions to this effect, the same question being presented under all the acts from 1789.

In *Chamberlain* v. *Eckert*, 2 Biss. 126, Judge Drummond held that the time of the commencement of the suit determined the question; and, among other things, said: "But if the rule contended for by the defendant is the true rule, then no change in the status of the payee, after the assignment, could ever enable a party to bring a suit, and it might happen, where the note was executed by the maker to the payee of another State, and at the time of the commencement of the suit in the Federal court, he was of the same State with the maker, the suit could be maintained by the assignee, a citizen of another State, because you have to look according to the view of the defence, to the status of the parties at the time that the assignor held the note. And if he ever could have prosecuted the suit, the assignee could prosecute it, although at the time when the suit is brought the payee and maker are citizens of the same State. That would be the necessary consequence, and the question recurs, what does the language of the statute mean, 'unless the suit might have been prosecuted in said court, if no assignment had been made?' I think it means at the time the suit was prosecuted, so that if it appears then that the assignor could have maintained the suit if no assignment had been made, the assignee being a citizen of another State, can maintain the suit." And see *Thaxter* v. *Hatch*, 6 McLean, 68.

In *White* v. *Leahy*, 3 Dillon, 378, the same conclusion was announced by Judge Dillon. The suit was a bill to foreclose brought in the Circuit Court for the District of Kansas by plaintiff, a citizen of Missouri, as the assignee of a note and mortgage. The maker and payee of the note were citizens of Kansas,

and were such at the time the note and mortgage were made and the payee endorsed the note and assigned the mortgage, and delivered the same to plaintiff in Missouri. But at the time the suit was brought the payee was a citizen of Texas. Judge Dillon said : " If no assignment of this note had been made, the assignor might, being at the time when suit was brought a citizen of Texas, have then commenced it ; and under the statute his assignee has the same right. If the restriction on the assignee does not exist at the time suit is commenced, the court has jurisdiction if the case involves the requisite amount and is between a citizen of the State where the suit is brought and a citizen of another State."

The same ruling was made by the Circuit Court of Appeals for the Fifth Circuit in *Jones* v. *Shapera,* 57 Fed. Rep. 457, and the foregoing and other cases were cited. See also *Portage Water Company* v. *Portage,* 102 Fed. Rep. 769.

In *Milledollar* v. *Bell,* 2 Wall. Jr. 334, which was a bill to foreclose, complainant, the mortgagee, was a citizen of New York, and defendant was a citizen of New Jersey, but there had been intermediate assignments. Mr. Justice Grier said : " The complainant's case is therefore within the strict letter of the law—nor can we discover anything in the spirit, equity or policy of the act, or in adjudged cases, which would compel us to give it a construction such as the defendant asks. The statute does not take from the assignee of a chose in action his right to sue in the courts of the United States, *unless his immediate assignor* could have sustained such action; but only in case the court could have had no jurisdiction as between the original parties to the instrument, *if no assignment had been made.* The situation or rights of temporary intermediate assignees, holders, or endorsers enters not into the conditions of the case:"

*Wilson* v. *Fisher,* Bald. 133, was approved. There a citizen of New York had obtained a judgment against a citizen of Pennsylvania in the Supreme Court of that State. The judgment was assigned to citizens of Pennsylvania, and subsequently to complainant, who was an alien, and jurisdiction was sustained; Hopkinson, J., saying : " The suit cannot be main-

tained here unless it might have been prosecuted here, if no assignment had been made ; that is,. as we understand it, if it had remained with the original parties to the transaction, contract or cause of action. The law does not declare that no assignee shall prosecute his suit in this court unless his assignor might have done so ; but, unless a recovery of the right claimed might have been had in this court if no assignment of it had been made ; and of course in every case in which a recovery might have been prosecuted in the courts of the United States if no assignment had been made, it may be so prosecuted after such assignment to a party competent to sue here."

In *Kirkman* v. *Hamilton*, 6 Pet. 20, where the payees of a note and the makers thereof were citizens of Tennessee, and before the note became due the payees became citizens of Alabama and endorsed it to a citizen of Alabama, the jurisdiction of the Circuit Court for the Western District of Tennessee of a suit brought by the holder of the note was upheld because the payees could have prosecuted a suit to recover the contents of the note in that court if no assignment had been made. But it is to be observed that the payees were not only citizens of Alabama when the suit was commenced, but when the note was assigned.

In *Mollan et al.* v. *Torrance*, 9 Wheat. 537, the declaration contained two counts. The first was against the defendant, Torrance, as endorser of a promissory note made by Spencer and Dunn, payable to Sylvester Dunn, and endorsed by him to Torrance, by whom it was endorsed to Lowrie, and by him to plaintiffs. The other count was for money had and received by Torrance to plaintiffs' use. The declaration stated plaintiffs to be citizens of New York, and defendant to be a citizen of Mississippi, but was silent " respecting the citizenship or residence of Lowrie, the immediate endorsee of Torrance, through whom the plaintiffs trace their title to the money for which the suit is instituted."

The ruling in *Young* v. *Bryan*, 6 Wheat. 146, " that an endorsee who resides in a different State, may sue his immediate endorser, residing in the State in which the suit is brought, although that endorser be a resident of the same State with the

maker of the note," was affirmed, but it was pointed out that: "In this case the suit is brought against a remote endorser, and the plaintiffs, in their declaration, trace their title through an intermediate endorser, without showing that this intermediate endorser could have sustained his action against the defendant in the courts of the United States. The case of *Turner* v. *Bank of North America*, 4 Dallas, 8, has decided that this count does not give the court jurisdiction. But the count for money had and received to the use of the plaintiffs being free from objection, it becomes necessary to look farther into the case." The record showed that defendant Torrance had filed a plea to the jurisdiction, in which he stated that the promises laid in the declaration were made to Lowrie, and not to plaintiffs, and that Lowrie and defendant were both citizens of the State of Mississippi. Plaintiffs demurred to this plea, the demurrer was sustained, and judgment rendered for defendant. The court overruled the plea because it averred that Lowrie and defendant were citizens of Mississippi at the time of the plea pleaded, not that 'they were citizens of the said State at the time the action was brought; and Chief Justice Marshall said: "It is quite clear that the jurisdiction of the court depends upon the state of things at the time of the action brought, and that after vesting it cannot be ousted by subsequent events. Since, then, one of the counts shows jurisdiction, and the plea does not contain sufficient matter to deny that jurisdiction, we think that the judgment ought not to have been rendered on the demurrer in favor of the defendant." The judgment was reversed and the cause remanded.

That was a suit on the distinct contract between endorsee and endorser, but as plaintiff was not the immediate endorsee, and made title through Lowrie, who was, the court held that the first count should have shown the competency of the latter to invoke the jurisdiction at the time the suit was brought.

· The general rule is that when a note or bill is endorsed in blank the *bona fide* holder of it may write an endorsement to himself or to another over the endorser's name, and where there are several endorsements in blank he may fill up the first one to himself or may deduce his title through all of them.

*Evans* v. *Gee*, 11 Pet. 80; 1 Daniel Neg. Inst. (4th ed.) §§ 693, 694, 694*a*.

However, this bill does not trace title through any intermediate assignee, and on the contrary does so directly from the original payees. It is true that there are averments that in a proceeding by one Goldstein, still pending and undisposed of in the Circuit Court, against other parties than the city of New Orleans, these claims, "now held" by complainant, were presented and proved, the master's report thereon being referred to but not set out; and also that in a suit by one Benjamin and certain intervenors brought against the city of New Orleans in the Circuit Court, and subsequently dismissed without prejudice, these claims, "since acquired and now held and owned by" complainant, were included; and while this shows that these warrants must have passed through the hands of others than complainant, it does not appear that there was any endorsement of them other than in blank, and on the bill as framed complainant distinctly appears to be assignee of the payees. What complications may emerge hereafter in respect of the prior cases, or either of them, need not be considered.

We answer the first question by saying that on the face of the bill the Circuit Court had jurisdiction on the ground of diverse citizenship.

*It will be so certified.*

MR. JUSTICE GRAY did not hear the argument and took no part in the decision.