519 F.2d 817
 171 U.S.App.D.C. 168, 75-2 USTC P 9687
 James L. BUCKLEY et al., Plaintiffs,
v.
Hon. Francis R. VALEO et al., Defendants,
Center For Public Financing of Elections, Common Cause, The
League of Women Voters of the United States, Chellis O'Neal
Gregory, Norman P. Jacknis, Susan B. King, Daniel R. Noyes,
Mrs. Edgar B. Stern, Charles P. Taft, John W. Gardner, and
Ruth Clusen, Intervening Defendants.
 No. 75-1061.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued April 2, 1975.
Decided April 14, 1975.
 
 Before BAZELON, Chief Judge, and WRIGHT, McGOWAN, TAMM, LEVENTHAL, ROBINSON, MacKINNON and WILKEY, Circuit Judges.
 ORDER
 PER CURIAM.
 
 
 1
 On consideration of the briefs, argument, and record made in connection with the pending motions to dismiss and to remand this action to the District Court, it is hereby
 
 
 2
 Ordered by the court that the motion to remand is granted to the extent indicated in the attached memorandum. The record herein is remanded together with the second round of filings of proposed findings of fact and supporting documents due on April 18, 1975 pursuant to our order of March 14, 1975. It is
 
 
 3
 Further ordered by the court that the District Court shall return the record to this court as soon as possible, but in no event later than May 19, 1975. It is
 
 
 4
 Further ordered by the court that final action by this court on defendants' motion to dismiss is deferred pending return of the record.
 
 
 5
 Chief Judge BAZELON dissents for the reasons set forth in his attached statement.
 
 MEMORANDUM
 
 6
 By the attached order, we seek to conform our treatment of this matter with the special review procedure set forth in Section 315(a) of the Federal Election Campaign Act, as amended (2 U.S.C. § 437h). That section requires that after the instituting of an action "as may be appropriate to construe the constitutionality of any provision of this Act or of section 608, 610, 611, 613, 614, 615, 616, or 617 of title 18, United States Code," then "(t)he district court immediately shall certify all questions of constitutionality of this Act or of section 608, 610, 611, 613, 614, 615, 616, or 617 of title 18, United States Code to United States court of appeals for the circuit involved, which shall hear the matter sitting en banc."
 
 
 7
 We are remanding the record to the District Court to do the following:
 
 
 8
 1. Identify constitutional issues in the complaint.
 
 
 9
 2. Take whatever may be necessary in the form of evidence over and above submissions that may suitably be handled through judicial notice, as of legislative facts, supported by legislative history or works reasonably available, to the extent not controverted in material and substantial degree.
 
 
 10
 3. Make findings of fact with reference to those issues.
 
 
 11
 4. Certify to this court constitutional questions arising from steps 1, 2, and 3.
 
 
 12
 As indicated in the attached order, the District Court will return the record, as augmented on remand, to this court immediately, and in no event later than May 19, 1975.
 
 
 13
 We follow this procedure without ruling on the contention of defendants that such a procedure is required by the "certify" provision of Section 315(a), and that this provision must be read in conjunction with the rulings on the provision for certification of questions to the Supreme Court.[1] We would reach the same result, at least at this juncture, even assuming that Section 315(a) establishes a sui generis procedure and contemplates that, in the interest of expedition, the Court of Appeals properly proceeds by appointing its own master to make a report of proposed findings. Our order is consonant with both these approaches, in practical aspect, and it is unnecessary to make a choice between them at this time. It is also consistent with the intention of Congress for expedition in appellate disposition.[2]
 
 
 14
 Certain of the parties have questioned whether Subtitle H of the Internal Revenue Code (the public financing of presidential elections provisions) is subject to the procedures of Section 315(a). They cite 26 U.S.C. § 9011(b), which by its plain words commands a different review procedure the convening of a three-judge court for review of Chapter 95 of Subtitle H. It is the view of the other parties that the review provisions set forth in Section 315(a) are sufficiently broad that all constitutional questions must be certified to this court.
 
 
 15
 To protect against the contingency that the Supreme Court might eventually hold that these issues should be decided by a three-judge court, either under 26 U.S.C. § 9011(b) or as to Chapter 96 under 28 U.S.C. §§ 2282, 2284, we suggest to the District Court that it certify the need for a three-judge court as to Subtitle H to the Chief Judge of this Circuit, in order that there may be parallel proceedings in that court and in this court with reference thereto.
 
 BAZELON, Chief Judge (dissenting):
 
 16
 I am strongly opposed to remand and severance at this time, as I view both unnecessary and likely to cause serious delay in deciding these vital matters. The plain words of sections 315(a)[1] and 9011(b)[2] notwithstanding, I cannot conceive that Congress wishes the constitutional questions arising in connection with regulation of private campaign financing and the institution of limited public campaign financing be decided in two or three separate forums.
 
 
 17
 Nor can I see what specific advance will come from a remand to formulate constitutional questions since the District Court's formulation can not be realistically binding either upon the parties or upon this court on review. The section 315(a) review provision really involves certification of an entire case and not isolated questions such as those covered by direct certification to the Supreme Court or the United States Temporary Emergency Court of Appeals. This is because the plaintiffs' attack is upon the facial limitations imposed in the challenged statutes, rather than upon application of those statutes to a murky fact situation.
 
 
 18
 The majority cites three Supreme Court cases holding that questions raised by certification must be precisely framed, and tailored to the specific controlling facts.[3] But those cases deal primarily with adjudicatory facts, or events which are themselves in dispute between the parties, and upon the resolution of which disputes by the trier of fact, application of law might well turn. And the certification involved, as I just noted, was of independent legal questions not the interrelated questions presented by this major constitutional case. At issue in this case is whether statutory prohibitions actually infringe upon constitutional rights. The facts bearing upon these questions are we should assume absent specific evidence of particular adjudicatory disputes legislative facts. In no way is the trial court better qualified than we to isolate and to decide those many questions whose resolution will turn on such legislative facts. Further, if the court below chooses to immerse itself in the long record made while the matter was on our docket, even more time may be lost.
 
 
 19
 The court tells us it does not decide whether these Supreme Court cases and their gloss on "certification" requires a formal certification procedure. But I perceive no other explanation for the court's action. Even if we ignore the term "remand," the practical effect of the court's decision is still to require compliance with these decisions on "certification." As to the majority's apparent view that this case must conform to normal judicial procedures of initial decision and appellate review, I think that the entire thrust of the review provision added by the 1974 Amendments was intentionally to make this case sui generis. In that regard, I would prefer selection as Special Master of an Article III judge to consider discovery requests and organize the already bulky factual presentations. The parties could then make motions for judgment in this court on the basis of the factual submissions. The majority's desire to "regularize" proceedings seems based on an unnecessarily technical view of our jurisdiction, a view motivated more, I take it, by a fear that the Supreme Court might reverse on such grounds than on a serious concern that assumption of jurisdiction would tamper with some important policy of judicial administration or impair the rights of any party or potential intervenor. I agree with plaintiffs' counsel when he stated at oral argument that any such fears should not be given significant weight. The Supreme Court, as well as we, can perceive the sui generis nature of this case and of Congress' command of expedition. And it will surely conclude, as I think we must, that no policy of judicial administration prevents a "nonregular" treatment of the case.
 
 
 20
 If this case is remanded to the District Court, and if discovery proceeds there, it may be utterly impossible for the May 19th deadline to be met. As it is, that date would only give this court a bare six weeks to hear objections to the District Court's formulation of questions and briefing and arguments on the merits before the July 1, 1975 date for disbursements to finance the nominating conventions pursuant to 26 U.S.C. § 9008(e). And, of course, this court and its personnel would have to re-immerse itself in the case and duplicate work performed by the District Court. A briefing schedule which contemplated appointment of a special master by this court would leave little time to spare for decisions of this matter, and I totally fail to perceive how remand will speed things up. This delay is particularly unfortunate considering the fact that the court has had the motion for remand under advisement officially since early February. The delay in ruling on the motion to remand is in my view cause enough to deny it, considering the further delay granting it will cause.
 
 
 21
 Further, I lay great emphasis upon section 315(a)'s use of the word "immediately" in the phrase "immediately shall certify." Some have argued that "immediately" here means the equivalent of "certify prior to deciding those constitutional questions it has formulated." But I would read the use of the word "immediately," in conjunction with the absence of any time provision relative to the District Court to mean that the case should be transmitted to this court immediately, if the trial judge finds any valid constitutional question raised by any person with standing to raise it. That was the understanding of the trial judge and I concur in it. The Memorandum and Order of January 24, 1975 specifically stated: "The Court specifically finds that the plaintiffs raise substantial constitutional questions, and that at least the four individual plaintiffs have standing to seek judicial review of the provision in question."
 
 
 22
 That being the case, I am of the view that our evidentiary order of March 14, 1975, in conjunction with another order appointing a Special Master to organize legislative facts submitted by the parties would provide a sufficient framework to focus and refine constitutional questions without remand. Such a procedure would also be more in harmony with the statute's call for expedition and avoid wasteful duplication. For these reasons, I would deny the motion for remand and dissent from the decision of the court.
 
 
 
 [1]
 See Lowden v. Northwestern Nat. Bank & Trust Co., 298 U.S. 160, 162, 56 S.Ct. 696, 80 L.Ed. 1114 (1936); Atlas Ins. Co. v. Southern, Inc., 306 U.S. 563, 572-573, 59 S.Ct. 657, 83 L.Ed. 987 (1939); Emsheimer v. New Orleans, 186 U.S. 33, 22 S.Ct. 770, 46 L.Ed. 1042 (1902)
 
 
 [2]
 The course we have designated will help avoid future embarrassment that might result if we chose one or another of the approaches offered by counsel and the Supreme Court were later to determine we had exceeded our authority
 
 
 [1]
 That is section 315(a) of the Federal Election Campaign Act, as amended, added by section 208(a) of the Federal Election Campaign Act Amendments of 1974
 
 
 [2]
 26 U.S.C. § 9011(b) contained within Chapter 95 of the Subtitle H and limited to "this chapter."
 
 
 [3]
 See Lowden v. Northwestern Nat. Bank & Trust Co., 298 U.S. 160, 162, 56 S.Ct. 696, 697, 80 L.Ed. 1114 (1936); Atlas Ins. Co. v. Southern, Inc., 306 U.S. 563, 571-573, 59 S.Ct. 657, 83 L.Ed. 987 (1939); Emsheimer v. New Orleans, 186 U.S. 33, 22 S.Ct. 770, 46 L.Ed. 1042 (1902). In Lowden, supra, the Court took the view that it would not answer questions on certification that were "abstract" and "unrelated," "unnecessarily general," or "which admit of one answer in one set of circumstances and a different answer in another; the differentiating circumstances being imperfectly disclosed." But there, there was no original jurisdiction in the Supreme Court, and the case was intended to go to judgment below. Here, no party or applicant for intervention argues that the statute contemplates judgment in the District Court. That said, the latitude for certification in the instant case is obviously broader. Lowden, supra, involved the technicalities of applying section 77 of the Bankruptcy Act to a
 complicated railway reorganization. While it is true that the trial judge did not formulate specific questions in the case at bar, neither is it the kind of case in which the questions which would be answered by this court would be abstract, unrelated, general or admitting of different answers since they relate chiefly to facial statutory dollar limitations. There is no danger here that this court will "declare a mere abstraction which might seem too narrow or too broad thereafter when the facts were shown forth." 298 U.S. at 163, 56 S.Ct. at 698. In another context the Lowden court comments about the error of assuming identical meanings each time the same word appears in statutory materials, which is very relevant to our inquiry into the meaning of the word "certify:" "when things are called by the same name, it is easy for the mind to slide into an assumption that the verbal identity is accompanied in all its sequences by identity of meaning." Id.
 Atlas, supra, involves the applicability of various defenses in a state action over cancellation of insurance policies. The Supreme Court refused to answer questions certified to it because of this defect: "the certified questions are incapable of categorical answer and the questions which they suggest can be properly answered only by reframing the questions certified or giving qualified answers to them." 306 U.S. at 572, 59 S.Ct. at 661. This case, too, involves no special statutory review procedure and deals with adjudicatory facts, the shape of which may affect the decisions of law. In the instant case the constitutional questions arising from the complaint are answerable in light of legislative facts, where different outcomes will turn on interpretation rather than disputed events shared by the parties.
 The Emsheimer case likewise involves a certification to the Supreme Court in a case where judgment below was required. There it was said, "The entire record should not be transmitted and a decision asked on the whole case," but rather that the certificate should "contain a proper statement of the facts on which such question or proposition of law arises." One test in Emsheimer is that each question of law "can be definitely answered without regard to other issues of law in the case." 186 U.S. at 42, 22 S.Ct. at 773. Taking that as a standard, I do not see how this court could review a interrelated multi-statute regulatory scheme as is raised herein.