**REPUBLICAN NATIONAL COMMITTEE et al., Plaintiffs,**

v.

**FEDERAL ELECTION COMMISSION, Defendants.**

No. 78 Civ. 2783.

United States District Court, S. D. New York.

Nov. 30, 1978.

572

Lord, Day & Lord, New York City, for plaintiffs; John W. Castles, 3d, New York City, Ralph K. Winter, New Haven, Conn., James M. Morrissey, New York City, of counsel.

William C. Oldaker, Charles N. Steele, Washington, D. C., for Federal Election Commission.

Robert B. Fiske, Jr., U. S. Atty., S. D. N. Y., New York City, for defendants Bell and Blumenthal; Patrick H. Barth, Asst. U. S. Atty., New York City, of counsel.

Ostrolenk, Faber, Gerb & Soffen, New York City, for Common Cause, Cohen, Waterman; Edward Meilman, New York City, Kenneth J. Guido, Jr., Ellen G. Block, Washington, D. C., of counsel.

## OPINION

GAGLIARDI, District Judge.

Plaintiffs Republican National Committee ("RNC"), the Ripon Society of New York, Inc. ("Ripon Society"), Paul C. Cardamone and John A. Schmid have brought this action for declaratory and injunctive relief. Plaintiffs challenge those portions of federal law which condition the receipt of federal campaign funds by presidential candidates upon compliance with campaign expenditure limits and forbearance from raising contributions to defray campaign expenses. The named defendants are the Federal Election Commission ("FEC") and its individual members, Attorney-General Griffin Bell and Secretary of the Treasury W. Michael Blumenthal.[1] Jurisdiction is premised upon 2 U.S.C. § 437h, 26 U.S.C. § 9011 and 28 U.S.C. §§ 1331, 2201 and 2202. Defendants have moved to dismiss the complaint for lack of subject matter jurisdiction and for failure to state a claim. Plaintiffs have moved for an order convening a three-judge district court. Finally, Common Cause, David Cohen and Nan Waterman have moved to intervene as defendants in this action.

The statutory scheme challenged by plaintiffs is contained in both the Presidential Election Campaign Fund Act, codified as Chapter 95 of Subtitle H of the Internal Revenue Code of 1954, as amended in 1974, ("Subtitle H"), 26 U.S.C. §§ 9001–9013, and the Federal Election Campaign Act ("FECA"), 2 U.S.C. §§ 431–55. 26 U.S.C. § 9006 establishes the "Presidential Election Campaign Fund" on the books of the United States Treasury. The Secretary of the Treasury is charged with transferring monies to this fund not in excess of the amounts designated by federal taxpayers under the tax-checkoff mechanism set forth in 26 U.S.C. § 6096.[2] To be eligible to

---

1. The natural person defendants are sued in their official capacity only.

2. Individual taxpayers, other than nonresident aliens, whose federal income tax liability for a taxable year is $1 or more may designate that

receive payments from the fund, a candidate of a "major party"—defined in 26 U.S.C. § 9002(6) as a party whose candidate in the preceding presidential election received at least 25% of the total popular vote—must certify to the FEC, under penalty of perjury, that: 1) he or she will not incur "qualified campaign expenses"[3] in excess of the aggregate payments from the fund to which he or she will be entitled under § 9004; and 2) he or she will not accept contributions to defray such expenses except to the extent necessary to make up any deficiency in payments received out of the fund on account of insufficient taxpayer check-offs. 26 U.S.C. § 9003(b). The amount to which each major party candidate is entitled under § 9004 cannot exceed the campaign expenditure[4] limitations set forth in the Federal Election Campaign Act, i. e., $20 million as adjusted for increases in the cost of living. 2 U.S.C. § 441a(b)(1)(B), (c). Thus, to receive public campaign funds the presidential candidate must limit campaign expenditures to approximately $20 million and, barring deficiencies in the fund, may not accept any private contributions to defray campaign expenses.

Plaintiffs in this action are the national committee of the Republican party, a New York corporation with politically active members of the Republican party and two individual party members. Their complaint sets forth six causes of action. First, they contend that the statutory scheme described above violates the First Amendment in that it conditions eligibility for federal campaign funds upon compliance with unconstitutional expenditure limitations and thereby restricts the ability of candidates and their parties, supporters and contributors to communicate their ideas. Second, they allege that the statutes are unconstitutional because the Republican presidential candidate in 1980 must, as a result of certain "legal and practical factors", accept federal campaign funding and thereby agree to comply with the unconstitutional expenditure limits. Plaintiffs contend that the raising of small contributions within the Federal Election Campaign Act's contribution limitations is time consuming and that the Republican nominee in 1980 probably will not be able to begin fund raising for the general election until after he or she is nominated. Doubt as to the timely availability of private funds is allegedly likely to hamper budgeting and reduce campaign activities, such as television broadcasts, which must be paid for in advance. These legal and practical factors effectively require the presidential candidate to accept public funding. Once the candidate does so, the statutory scheme limits the expenditures that may be made and prohibits the acceptance of contributions with the following results: the limits on campaign expenditures allegedly induce candidates to concentrate on campaign activities which give them great exposure at relatively low cost—mass media advertising—at the expense of local organizational, "grass roots" activities; and the prohibition on direct campaign contributions, no matter how small, allegedly limits individual citizens in their ability to engage in political communication.

As a third cause of action, plaintiffs assert that the statutory scheme unconstitutionally discriminates against candidates

$1 be paid over to the Presidential Election Campaign Fund. In the case of a joint return by spouses having a liability exceeding $2, each spouse may designate that $1 be paid to the fund. 26 U.S.C. § 6096(a).

3. Qualified campaign expenses are those incurred by the candidate or his authorized committee "to further his election." 26 U.S.C. § 9002(11).

4. Under 2 U.S.C. § 431(f), the term "expenditure" includes any "purchase, payment, distribution, loan, advance, deposit, or gift of money or anything of value" made for the purpose of influencing the election of any person to the office of presidential elector. The term does not include, inter alia: 1) any communication by a membership organization or corporation to its members or stockholders if such organization or corporation is not organized primarily to influence elections; 2) nonpartisan activity designed to encourage individuals to register to vote or to vote, or 3) a payment made by a corporation or a labor organization which, under § 441b(b) discussed infra, would not constitute an expenditure.

challenging incumbent Presidents in violation of the First and Fifth Amendments. Contending that it is likely that the Republican presidential candidate in 1980 will run against an incumbent, plaintiffs complain that the expenditure limits will discriminate against the Republican challenger. Incumbent presidents have the advantage of free publicity; virtually all of their activities are inherently newsworthy. Moreover, incumbent Presidents have the significant resources of the executive branch—from speechwriters and political advisors to jet planes and limousines—at their disposal during election campaigns. The limitations on campaign expenditures allegedly preclude challengers from commanding equivalent public attention.

As a fourth cause of action plaintiffs allege that the statutory scheme's conditioning of federal funding upon compliance with expenditure limitations discriminates against candidates who are not politically allied with a substantial number of labor organizations in violation of the First and Fifth Amendments. Plaintiffs contend that it is unlikely that the Republican presidential candidate in 1980 will be supported by a substantial number of labor organizations. Under the FECA, 2 U.S.C. § 441b, labor organizations are permitted to spend unlimited amounts of money which do not count against the $20 million limit on a candidate's campaign expenditures to communicate with members and their families "on any subject" and to conduct non-partisan registration and get-out-the-vote drives among members and their families. Plaintiffs allege that there is a high degree of coordination among labor organizations in carrying out these activities which can, in turn, be fully coordinated with the activities of the principal campaign committee of a presidential candidate. Although plaintiffs acknowledge that 2 U.S.C. § 441b grants corporations the same rights of communication with respect to their shareholders and executive or administrative personnel, they contend that labor organizations have a number of practical advantages in communicating with their membership on political matters, e. g., the ability to impose

and collect dues, geographic concentration of union membership and ready access to potential members. Plaintiffs estimate that in 1976, disbursements by labor organizations on behalf of President Carter's campaign exceeded $11 million, or approximately 50% of the adjusted expenditure amount permitted under the statutory scheme. Consequently, the Carter campaign allegedly spent 150% of the amount spent by the Ford campaign.

For their fifth and sixth causes of action respectively, plaintiffs allege that the statutory scheme is both unconstitutionally overbroad under the First and Fifth Amendments and in violation of their retained rights under the Ninth Amendment.

Defendants' motion to dismiss raises two distinct objections to the complaint. First, defendants argue that plaintiffs' various constitutional objections were rejected by the Supreme Court in *Buckley v. Valeo*, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976). *Buckley* involved a broad constitutional attack against both the FECA and Subtitle H. The Court invalidated the FECA's campaign expenditure ceilings in Part I of its 144-page per curiam opinion, but stated that:

> For the reasons discussed in Part III, *infra*, Congress may engage in public financing of election campaigns and may condition acceptance of public funds on an agreement by the candidate to abide by specified expenditure limitations. Just as a candidate may voluntarily limit the size of the contributions he chooses to accept, he may decide to forgo private fundraising and accept public funding.

424 U.S. at 57, 96 S.Ct. at 653, n.65. In Part III of the opinion, the Court held that Subtitle H: 1) was within Congress's Article I, § 8 power to legislate for the "general welfare"; 2) did not, by analogy to the prohibition against public spending contained in the Religion Clause of the First Amendment, violate the Free Speech Clause of that amendment; and 3) was not invidiously discriminatory against minor and new parties in violation of the Fifth Amendment. *Id.* at 86–108.

Defendants' second ground for dismissal is based upon the "case or controversy" requirement of Article III. Defendants contend that plaintiffs' speculative scenario for the 1980 presidential election and the statutory scheme's effect thereon does not present this court with the "ripe" controversy necessary to the exercise of judicial power. *See, e. g., United Public Workers v. Mitchell,* 330 U.S. 75, 67 S.Ct. 556, 91 L.Ed. 754 (1947); *Clark v. Valeo,* 182 U.S.App. D.C. 21, 559 F.2d 642, *aff'd sub nom. Clark v. Kimmit,* 431 U.S. 950, 97 S.Ct. 2667, 53 L.Ed.2d 267 (1977). As to the fourth cause of action only, defendants also argue that the "political question" doctrine bars any consideration of the claim that FECA and Subtitle H discriminate against candidates without substantial labor organization support because there are no judicially manageable standards for resolution of such a claim. *See Baker v. Carr,* 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962).

Plaintiffs, of course, dispute both defendants' reading of *Buckley* and their assessment of the justiciability of the issues presented. Moreover, as a threshold matter, plaintiffs argue that this court ought not decide defendants' motion to dismiss at the present time. For the reasons stated below, the court agrees and declines to decide the motion to dismiss.

Both the FECA and Subtitle H contain unusual provisions for judicial review. 2 U.S.C. § 437h(a), the FECA provision, states:

> The Commission, the national committee of any political party, or any individual eligible to vote in any election for the office of President of the United States may institute such actions in the appropriate district court of the United States, including actions for declaratory judgment, as may be appropriate to construe the constitutionality of any provision of this Act. The district court immediately shall certify all questions of constitutionality of this Act to the United States court of appeals for the circuit involved, which shall hear the matter sitting en banc.

26 U.S.C. § 9011(b), the Subtitle H provision, reads as follows:

> (1) The Commission, the national committee of any political party, and individuals eligible to vote for President are authorized to institute such actions, including actions for declaratory judgment or injunctive relief, as may be appropriate to implement or contrue [sic] any provision of this chapter.

> (2) The district courts of the United States shall have jurisdiction of proceedings instituted pursuant to this subsection and shall exercise the same without regard to whether a person asserting rights under provisions of this subsection shall have exhausted any administrative or other remedies that may be provided at law. Such proceedings shall be heard and determined by a court of three judges in accordance with the provisions of section 2284 of title 28, United States Code, and any appeal shall lie to the Supreme Court. It shall be the duty of the judges designated to hear the case to assign the case for hearing at the earliest practicable date, to participate in the hearing and determination thereof, and to cause the case to be in every way expedited.

Several perplexing procedural issues are posed by these statutes. In light of the strong Congressional policy in favor of expediting cases of this nature, ought a single district court judge determine the justiciability of the case before him prior to requesting either certification to the Court of Appeals under § 437h or the convening of a three-judge court under § 9011(b)? Do constitutional challenges to Subtitle H require the convening of a three-judge court insofar as jurisdiction under § 9011(b) extends only to actions "to implement or construe" the provisions of Subtitle H? Alternatively, ought constitutional challenges to Subtitle H be heard by the Court of Appeals *en banc* under § 437h? Whatever procedural route is followed, what are the fact finding responsibilities of the single district judge? Improper resolution of these knotty procedural issues might subvert the Congressional policy of expeditious review and deprive

plaintiffs of the chance for a timely and definitive ruling from the Supreme Court.

The experience of the District of Columbia Circuit Court of Appeals with these statutes is instructive. *See generally* Leventhal, Courts and Political Thickets, 77 Columbia Law Review 345, 384–87 (1977). In *Buckley v. Valeo,* 171 U.S.App.D.C. 168, 519 F.2d 817 (1975), the Court remanded the record to the district court, which had previously certified the constitutional issues without making findings of fact. The district court was directed to: 1) identify constitutional issues in the complaint; 2) take whatever evidence that may be necessary; 3) make findings of fact as to the constitutional issues, and then 4) certify them to the Court of Appeals. *Id.* 171 U.S.App.D.C. at 169, 519 F.2d at 818. To protect against the contingency that the Supreme Court might have held that the Subtitle H issues had to be decided by a three-judge court, the district court was also directed to certify the need for a three-judge court as to those issues. *Id.* 171 U.S.App.D.C. at 170, 519 F.2d at 819. Parallel proceedings were subsequently held in the Court of Appeals and the three-judge court. The Court of Appeals heard and determined the Subtitle H issues as well as the FECA issues, *Buckley v. Valeo,* 171 U.S.App.D.C. 172, 519 F.2d 821 (1975), *aff'd in part and rev'd in part,* 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976), and the three-judge court merely adopted the Circuit's conclusions as to the constitutionality of Subtitle H. *Buckley v. Valeo,* 401 F.Supp. 1235 (D.D.C.1975), *aff'd,* 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976). On appeal from both judgments, reasoning that it had jurisdiction to hear at least one of the appeals before it, the Supreme Court chose not to resolve the jurisdictional ambiguities posed by the statutes. 424 U.S. at 9–10, 96 S.Ct. 612 n.6 (1976).

■ In *Clark v. Valeo, supra,* the District of Columbia Circuit adhered to the procedure it had followed in *Buckley.* Moreover, to the contention that the district court must make a finding as to justiciability prior to certification under § 437, the Court responded:

Neither Judge Corcoran in *Buckley* nor Judge Richey in the instant case chose to do so. Given the statute's language regarding expedition and the settled precedent, we see no need to impose such a requirement. A District Judge requested to make certification under § 437h should be free to dismiss for want of jurisdiction, or to permit that question to be decided by this court *en banc,* much as a single judge asked to seek convening of a three-judge court under 28 U.S.C. § 2284 may determine threshold jurisdictional questions himself or herself, or call for such a court and allow that court to decide the matter. We similarly see no reason to disturb precedent with respect to the overlap of constitutional review by this court *en banc* and a three-judge court convened pursuant to 26 U.S.C. § 9011(b), *infra* note 3. Should a complaint be so narrowly focused as to reach only Title 2 matters, or only Title 26 matters, it might be appropriate for constitutional questions to be referred to a Court of Appeals *en banc* only, or to a three-judge court only; but where a complaint attacks statutory provisions in both Title 2 and Title 26, the *Buckley* precedent provides the surest path to rapid decision and Supreme Court review.

182 U.S.App.D.C. at 21, 559 F.2d at 646 n.2. Given the importance of the issues raised in this case and the clear Congressional commitment to expedited review, this court concurs with Judge Richey that "[i]t makes much more sense . . . to allow the Court of Appeals to consider all of these questions at once . . ." *Clark v. Valeo,* Civil Action No. 76–1227 (D.D.C. August 13, 1976). Accordingly, defendants' motion to dismiss is denied without prejudice.

■ Plaintiffs have moved for the convening of a three-judge district court pursuant to 26 U.S.C. § 9011(b). The motion is granted.[5] Plaintiffs have not as yet for-

5. Still unclear after both *Buckley* and *Clark* is the issue of whether the repeal of the Three

Judge Court Act, 28 U.S.C. § 2282, Pub.L. No. 94–381, § 2, 90 Stat. 1119, effective August 12,

mally requested certification of constitutional questions to the *en banc* Court of Appeals pursuant to § 437h but, for the reasons discussed above, this court will entertain such a motion if it is made. Although the bulk of the complaint is addressed to the constitutionality of Subtitle H's conditioning of public funding upon compliance with expenditure limitations and contribution prohibitions, plaintiffs' fourth cause of action, which concerns the impact of labor organization involvement in campaigns pursuant to 2 U.S.C. § 441b upon candidates who accept public funding, involves the FECA as well.

### The Motion to Intervene

Common Cause, a non-profit, non-partisan membership corporation organized to promote its members' interests in civic affairs, and two of its principal officers have moved to intervene in this action pursuant to Rule 24, Fed.R.Civ.P. The movants seek to intervene both as of right pursuant to Rule 24(a) and by leave of court pursuant to Rule 24(b).

■ Rule 24(a)(1) provides for intervention as of right "when a statute of the United States confers an unconditional right to intervene." Neither of the statutes in question confers such a right upon the movants. Both 2 U.S.C. § 437h and 26 U.S.C. § 9011 grant statutory standing to sue to individuals eligible to vote in any Presidential election. To construe either of these statutes as granting movants an unconditional right to intervene would require this court to permit every eligible voter in the United States the same right. Congress

could hardly have contemplated such a result in a statute designed for expedited judicial review.[6]

■ Rule 24(a)(2) requires intervention as of right "when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest unless the applicant's interest is adequately represented by existing parties." Assuming, for the sake of argument, that movants' general ideological commitment to "good government" is a sufficient "interest" for the purposes of this rule, *see, e. g., Smuck v. Hobson,* 132 U.S.App.D.C. 372, 408 F.2d 175 (1969); *Nuesse v. Camp,* 128 U.S. App.D.C. 172, 385 F.2d 694 (1967), the court finds movants' interest to be protected adequately. Counsel for the defendants have actively contested this litigation to date, and there is no reason to question either their capability or their commitment.

■ Finally, under Rule 24(b)(2), Fed.R. Civ.P. this court enjoys the discretion to permit intervention "when an applicant's claim or defense and the main action have a question of law or fact in common." In exercising its discretion, however, the Rule requires that the court "consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." The delay that would undoubtedly be engendered by permitting the movants to intervene in this action would frustrate the clear legislative command for prompt judicial review. Accord-

---

1976, requires a *single* judge to determine the constitutionality of the provisions of Subtitle H. If the reference in 26 U.S.C. § 9011(b) to jurisdiction "to interpret or construe" the provisions of Subtitle H does not include jurisdiction to determine their constitutionality, *see supra,* a constitutional challenge to Subtitle H could be determined only by a single district judge pursuant to 28 U.S.C. § 1331. Since, under *Buckley v. Valeo,* this court is permitted to make findings of fact in the first instance, this additional conceptual complication ought not pose any practical difficulties.

6. *Local 238 v. Scofield,* 382 U.S. 205, 86 S.Ct. 373, 15 L.Ed.2d 272 (1965), upon which movants principally rely, is wholly inapposite. That case involved actions brought in the Court of Appeals to review orders of the National Labor Relations Board. Although the National Labor Relations Act was silent on the issue of intervention, the Court held that the prevailing party should be permitted to intervene as a matter of federal labor policy in a review proceeding commenced by the unsuccessful party before the National Labor Relations Board. *Scofield* did not involve Rule 24(a)(1) and has not been interpreted by the courts as requiring the result movants here seek.

578

ingly, the motion to intervene is denied with leave to file briefs *amicus curiae.*

So Ordered.