**FEDERAL ELECTION COMMISSION,**
**Petitioner,**

v.

**FLORIDA FOR KENNEDY**
**COMMITTEE, Respondent.**

**No. 79–5964–Civ–JLK.**

United States District Court,
S. D. Florida,
Miami Division.

May 2, 1980.

Charles N. Steele, Lawrence M. Noble, Marsha G. Gentner, R. Scott Rinn, Federal Election Commission, Washington, D. C., for petitioner.

Donald M. Middlebrooks, Steel, Hector & Davis, Miami, Fla., for respondent.

## ORDER ON PROCEDURES

JAMES LAWRENCE KING, District Judge.

This order concerns the narrow question of what procedures should be followed in enforcing a subpoena issued by the Federal Election Commission. The Florida for Kennedy Committee refused to comply with a Commission subpoena and the Commission petitioned this court for an order to show cause why the subpoena should not be enforced. That order has not yet been issued, due to the court's concern that some preliminary discussion be given to the procedures which should be followed in reaching the merits.

### I. *THE FACTS.*

The Florida for Kennedy Committee (FFKC) was formed in mid-May 1979, with the avowed intent to persuade Senator Edward Kennedy to seek the Democratic nomination for the Presidency of the United States. It registered with the Federal Election Commission (FEC) and filed contribution and expenditure reports.[1] The Committee ceased operations once Senator Kennedy announced his candidacy.

On October 4, 1979, the Carter-Mondale Presidential Committee, Inc., filed a complaint with the Commission, alleging that the FFKC, along with other "draft Kennedy" committees, had violated the Federal Election Campaign Act (the Act). The

---

1. The FFKC asserts that it registered even though it was "in doubt concerning the applicability of the Federal Election Campaign Act." Because the applicability of that act is a central issue in the committee's resistance to the subpoena, this registration cannot be taken as an admission that the act applied. To so assume would discourage the registration and reporting which took place in this case, and thereby undermine the clear intent of the statute.

complaint alleged that the draft committees were "affiliated" within the meaning of the Act.[2] Affiliated committees are required to report their relationship, 2 U.S.C. § 433(b)(2), and are subject to contribution limitations, *see, e. g.*, 2 U.S.C. § 441a(a)(1)(C) (no individual or committee may contribute in excess of $5,000 to any group of affiliated committees supporting a single candidate). It is undisputed that the Committee never registered as affiliated with other groups, and the Carter-Mondale complaint set forth instances in which the various allegedly affiliated committees had received contributions exceeding an aggregate of $5,000.

On the basis of the Carter-Mondale complaint, the Commission concluded that there was "reason to believe" that the Act had been violated. Having reached that conclusion, the Commission was required by statute to investigate. *See* 2 U.S.C. § 437g(a)(2). The subpoena which is the subject of this action followed.[3]

FFKC moved to squash the subpoena, but the Commission voted to deny this attempt. FFKC notified the Commission that it would refuse to comply with the subpoena, and this suit followed. The court's review of the petition and accompanying motion left some question as to the appropriate procedures to be followed in enforcing the subpoena. The Act makes no explicit provision for procedures, although it does indicate that Congress intended Commission matters to be dealt with promptly by the

---

**2.** For the purpose of the reporting requirements of the Act, 2 U.S.C. § 433(b)(2), "affiliation" is defined by the Regulations:

> (c) *Affiliated committee.* (1) All authorized committees of the same candidate are affiliated.
>
> (2) All committees (including a separate segregated fund, see Part 114) established, financed, maintained, or controlled by the same corporation, labor organization, person, or group of persons, including any parent, subsidiary, branch, division, department, or local unit thereof, are affiliated.

11 C.F.R. § 100.14(c) (1977). Subsections (c)(2)(i) and (ii) set forth specific examples of affiliated committees and indicia for determining whether situations not specifically covered indicate affiliation.

The definition of "affiliation" for purposes of the contribution limitations, 2 U.S.C. §§ 441a(a)(1)(C), 441a(a)(2)(C), is probably the same. The limitations are applied to committees defined in a manner similar to the regulation quoted above. *See* 2 U.S.C. § 441a(a)(5). Moreover, the Regulations implementing the contribution limitations specifically refer to the quoted regulation. *See* 11 C.F.R. § 110.-3(a)(1)(i).

**3.** The subpoena has a very broad scope. It orders production of:

> 1. All documents and materials (including but not limited to letters, memoranda, minutes, notes, and records of telephone conversations) relating to meetings, discussions, correspondence, or other communications between any official, employee, staff member, volunteer, organizer, or agent of FKC and any of the following persons or organizations or their officials, employees, staff members, volunteers, organizers, or agents: [The subpoena then lists 10 organizations and three individuals.]
>
> 2. All documents and materials . . . concerning the formation, organizational structure, and staff assignments of FKC or any of the organizations listed in 1 a–h above.
>
> 3. All documents and materials relating to any fundraising activities of FKC in the States of Iowa, New Hampshire, Illinois, California and Minnesota and the District of Columbia, including but not limited to writings indicating who was involved in organizing or coordinating any such activities and who was contacted in the listed states.
>
> 4. All articles of incorporation, by-laws, rules, regulations, procedural manuals, policy statements, governing instruments, or other documentation of policies or procedures of FKC.
>
> 5. All telephone bills or other records of telephone calls made by FKC or any of its officials, employees, staff members, volunteers, organizers, or agents.
>
> 6. All documents and materials . . . relating to travel by officials, employees, staff members, volunteers, organizers, or agents of FKC.
>
> .  .  .  .  .
>
> 1. . . . a list of all officials, employees, staff members, volunteers, organizers, and agents of FKC. For each individual listed please indicate the title or position held and the dates of service.
>
> 2. . . . the date of organization of FKC.
>
> 3. . . . the telephone numbers of FKC and of every official, employee, staff member, volunteer, organizer, and agent of FKC. For each number listed please indicate the listed or known name of the person to whom each number belongs.

courts.[4] There are no reported cases on the enforcement of Federal Election Commission subpoenas. The court concluded that it would be appropriate to require service of the petition on respondents and to provide them with 10 days to state their position on the narrow procedural issue. The Commission served the petition, and moved this court to act summarily on it. FFKC requested a somewhat more elaborate procedure.

## II. *THE PARTIES' CONTENTIONS.*

█ Federal Rule of Civil Procedure 81(a)(3) controls this case. It provides that the federal rules "apply to proceedings to compel the . . . production of documents in accordance with a subpoena issued by an officer or agency of the United States . . . except as otherwise provided by statute or by rules of the district court or by order of the Court in the proceedings." This rule provides a district judge with broad discretion.[5] *Donaldson v. United States*, 400 U.S. 517, 528, 91 S.Ct. 534, 541, 27 L.Ed.2d 580 (1971).

The FEC moved this court to employ a "summary" enforcement procedure. Summary procedures contemplate an "escape [from] some or most . . . trial procedures." *New Hampshire Fire Ins. Co. v. Scanlon*, 362 U.S. 404, 406, 80 S.Ct. 843, 845, 4 L.Ed.2d 826 (1960). They "may be conducted without formal pleadings, on short notice, without summons and complaints, generally on affidavits, and sometimes even *ex parte.*" *Id.*

The use of summary procedures for the enforcement of agency subpoenas has been expressly approved. *See, e. g., Donaldson v. United States*, 400 U.S. at 528, 91 S.Ct. at 541 (citing Rule 81). But determination of the precise procedures to be followed requires a careful balancing. In *Donaldson*, a request for intervention was rejected, and summary proceedings approved, only after a determination that "the rights of the party summoned were protected." *Id.* at 529,

91 S.Ct. at 541. On the other hand, there is an undeniable need on the agency's part for swift and efficient investigation, a need which would be frustrated if every person investigated could convert the investigation into a trial. *Hannah v. Larche*, 363 U.S. 420, 446, 80 S.Ct. 1502, 1517, 4 L.Ed.2d 1307 (1960); *accord United States v. Newman*, 441 F.2d 165, 173–74 (5th Cir. 1971).

Congress clearly intended investigations under the Federal Election Campaign Act to proceed swiftly. The Commission is under a duty to conduct its investigations "expeditiously," 2 U.S.C. § 437g(a)(3)(A), and a complaining party may seek a court required investigation if one is not forthcoming within 90 days, 2 U.S.C. § 437g(a)(9). Commission actions are to be "advanced on the docket of the court in which filed, and put ahead of all other actions." 2 U.S.C. § 437g(a)(11).

The specific procedure requested by the FEC seems appropriate under this scheme. The order to show cause which the Commission sought to have issued would have required the FFKC to respond to the subpoena by a certain date. It would also have provided an opportunity to file pleadings and to be heard on why the subpoena should not be enforced prior to the compliance date. This procedure is essentially that approved in *Donaldson* and other enforcement actions.

The FEC thus places, to continue the metaphor, considerable weight on its side of the balance. It has made a request supported by Congressional intent and generally approved by the case law. Indeed, the case law on enforcement proceedings would provide rather simple answers to the issues raised by the FFKC, were this case in a familiar context. But there have been no cases involving an FEC subpoena. Accordingly, in an attempt to protect "the rights of the party summoned," the claims of the FFKC must be examined in some detail to determine whether they raise unique issues.

---

4. See section II *infra.*

5. There is no contention here that either a statute or a local district rule provides procedures for this case.

The FFKC requested that the court follow a 5-step procedure in this action: (1) the Committee should be permitted to answer; (2) the Committee should be permitted to counterclaim for injunctive relief; (3) certain members of the Committee should be permitted to intervene; (4) the Committee and intervenors should be permitted to apply for a preliminary injunction; (5) the Committee should be permitted to perform limited discovery. Each of these steps, it was asserted, are necessary in order to develop fully the objections FFKC seeks to interpose to the subpoena enforcement. A review of the material submitted by FFKC [6] indicates that the claims it seeks to raise are in two broad classes. First, the Committee seeks to challenge the validity, both constitutional and otherwise, of the investigation. Second, it seeks to challenge the propriety and constitutionality of applying the Act to it. In short, the questions which this court must address are therefore two: (1) which of these claims must be heard in an enforcement proceeding; (2) which of the requested procedures are necessary for the elucidation of the appropriate claims.

### III. ISSUES APPROPRIATE TO A SUMMARY PROCEEDING.

Traditionally, only two issues have been viewed as appropriate to an agency subpoena enforcement proceeding: (1) whether the demand is within the agency's authority; (2) whether the demand is sufficiently precise and relevant. See United States v. Morton Salt Co., 338 U.S. 632, 652–53, 70 S.Ct. 357, 369, 94 L.Ed. 401 (1950). There appears to be some dispute over whether the constitutional challenges which FFKC seeks to raise are appropriately within the ambit of "authority" questions. Moreover, the FFKC seeks to raise issues which, although collateral to the question of enforcement, assertedly should be heard in the enforcement proceeding.

### A. Constitutional Questions.

The Committee intends to interpose a two-prong objection to enforcement of the subpoena. First, it will allege that the subpoena is unconstitutional. Second, it will allege that constitutional considerations require the Commission to meet a heavy burden before enforcement. Both of these objections rest on the First Amendment and its guarantees of free speech and association.

■ Constitutional challenges are clearly appropriate subject matter for subpoena enforcement proceedings. See Justice v. United States, 390 U.S. 199, 88 S.Ct. 901, 19 L.Ed.2d 1038 (1967) (memorandum decision), aff'g 365 F.2d 312 (6th Cir. 1966) (constitutional claim held appropriate ground for challenge); Reisman v. Caplin, 375 U.S. 440, 445, 84 S.Ct. 508, 511–12, 11 L.Ed.2d 459 (1964) (approval of Circuit Court cases allowing constitutional objections). Indeed, in Morton Salt, the very case cited by the FEC for the proposition that agency authority is an appropriate issue, the court addressed constitutional issues. 338 U.S. at 651–54, 70 S.Ct. at 368–70 (Fourth and Fifth Amendment objections rejected).

Nonetheless, the FEC asserts that "the existence of a first amendment issue in the context of a subpoena enforcement action does not negate the standard established for subpoena enforcement actions." As support for this assertion, it cites Oklahoma Press Publishing Co. v. Walling, 327 U.S. 186, 66 S.Ct. 494, 90 L.Ed. 614 (1946). Hence, the question is raised whether the presence of a First Amendment issue is relevant to a determination of appropriate procedures.

At the outset, it should be noted that Oklahoma Press was not a procedure case; rather, it dealt with substantive challenges to a subpoena. A newspaper challenged the

---

**6.** As attachments to its procedure motion, the FFKC provided the following draft pleadings: a proposed counterclaim, a proposed motion to intervene, a proposed request for admissions and interrogatories, a proposed application for preliminary injunction, and a proposed memorandum of law. These materials were offered to demonstrate that the FFKC did "not wish to delay these proceedings in any way."

propriety of a subpoena by challenging the coverage of the Act under which the subpoena was issued. The case does not state that First Amendment considerations should not bear on procedural issues.

*Oklahoma Press* does, however, present the only meaningful case involving a First Amendment challenge to an agency subpoena. The claim there, that the First Amendment barred application of the Fair Labor Standards Act to a newspaper, was found frivolous. *Id.* at 192–93, 66 S.Ct. at 497. Obviously this court need not found new procedures for the protection of frivolous claims. If, as petitioners appear to contend, *Oklahoma Press* stands for the proposition that First Amendment objections to subpoena enforcement are frivolous, then the simplest summary procedures would be appropriate. A preliminary review of the First Amendment objections which FFKC will interpose to the subpoena enforcement (as opposed to those discussed in Part III B, below) is therefore appropriate.

### 1. *First Amendment Principles.*

Two theories underlie the First Amendment's protection of free speech. First, it may be seen as a means to some further end, such as successful self-government. Second, it may be seen as an end in itself, an expression of the sort of society the framers of the constitution sought to create. L. Tribe, American Constitutional Law § 12–1 (1978). Whichever theory is applied, "it can hardly be doubted that the [First Amendment] has its fullest and most urgent application precisely to campaigns for political office."[7] *Monitor Patriot Co. v. Roy*, 401 U.S. 265, 272, 91 S.Ct. 621, 625, 28 L.Ed.2d 35 (1971).

That free political speech will produce valued ends cannot seriously be disputed. As Justice Brandeis wrote more than fifty years ago,

> Those who won our independence . . believed that freedom to think as you will and to speak as you think are means indispensable to the discovery and spread of political truth . . . .

*Whitney v. California*, 274 U.S. 357, 375, 47 S.Ct. 641, 648, 71 L.Ed. 1095 (1927) (Brandeis, J., concurring); *accord Brandenburg v. Ohio*, 395 U.S. 444, 89 S.Ct. 1827, 23 L.Ed.2d 430 (1969) (overruling *Whitney*). These axioms were applied to "discussion of candidates, structures and forms of government, the manner in which government is operated and should be operated, and all such matters relating to the political process" in *Mills v. Alabama*, 384 U.S. 214, 218–19, 86 S.Ct. 1434, 1437, 16 L.Ed.2d 484 (1966). Discussions of "public issues and . . . the qualifications of candidates" have been held to deserve "the broadest protection . . . in order 'to assure [the] unfettered interchange of ideas for the bringing about of political and social changes desired by the people.'" *Buckley v. Valeo*, 424 U.S. 1, 14, 96 S.Ct. 612, 632, 46 L.Ed.2d 659 (*quoting Roth v. United States*, 354 U.S. 476, 484, 77 S.Ct. 1304, 1308, 1 L.Ed.2d 1498 (1957)).

Political speech may also, in itself, help create the society the framers sought. The Court has consistently analyzed First Amendment claims "against the background of a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open." *New York Times Co. v. Sullivan*, 376 U.S. 254, 270, 84 S.Ct. 710, 721, 11 L.Ed.2d 686 (1964). Perhaps the most eloquent statement of that national commitment actually predates the Constitution:

> The importance of [free speech] consists, besides the advancement of truth, science, morality, and arts in general, in its diffusion of liberal sentiments on the administration of Government, its ready communication of thoughts between subjects, and its consequential promotion of union among them, whereby oppressive officers are shamed or intimidated, into more honorable and just modes of conducting affairs.

1 Journals of the Continental Congress 108 (1774), *quoted in Roth v. United States*, 354 U.S. at 484, 77 S.Ct. at 1308–09.

---

**7.** By using this quotation, the Court does not indicate any conclusion on whether the activities of the FFKC constituted "campaign for political office" activities.

The subpoena in the present case is not aimed directly at regulating political speech. Rather, it is aimed at investigating the activities and affiliations of a political organization. In determining whether a First Amendment objection may be made to the enforcement of this subpoena, two questions must therefore be addressed: (1) whether the activities of a political organization are protected; (2) whether those activities may be investigated.

The First Amendment's protections have been expressly held to extend to "political association as well as political expression." *Buckley v. Valeo*, 424 U.S. at 15, 96 S.Ct. at 632. The theories underlying the amendment clearly require this result. From a practical point of view, "[e]ffective advocacy of both public and private points of view, particularly controversial ones, is undeniably enhanced by group association." *NAACP v. Alabama*, 357 U.S. 449, 460, 78 S.Ct. 1163, 1170, 2 L.Ed.2d 1488 (1958).

Determining whether the First Amendment protects against investigation is a somewhat more subtle question. An attempt to investigate is not a direct regulation of speech. But that does not exempt it from First Amendment scrutiny. *Cf. Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council*, 425 U.S. 748, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976) (statute barring dissemination of prescription drug information held unconstitutional); *New York Times v. Sullivan*, 376 U.S. at 267–83, 84 S.Ct. at 719–22 (constitution requires showing of actual malice in libel actions brought by public officials). Speech may be abridged both by regulations aimed at it and by regulations which, while pursuing other ends, collaterally effect it. L. Tribe, *supra* § 12–2 at 580.

Precisely this theory of the First Amendment's protection was applied to the Federal Election Campaign Act in *Buckley v. Valeo*, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976). The Act's expenditure limitations were held to raise First Amendment

issues because "virtually every means of communicating ideas in today's mass society requires the expenditure of money." *Id.* at 19, 96 S.Ct. at 635. After balancing the need for the limitations—in that case, prevention of corruption—against First Amendment guarantees, the Court invalidated several limitations. *Id.* at 58, 96 S.Ct. at 653 (independent expenditures, candidate's expenditures from own funds, and overall expenditure ceilings invalidated). The First Amendment, the Court held, could not tolerate the restrictions on political expression resulting from the expenditure limitations.[8]

The issue thus becomes whether an investigation causes the sort of "indirect" abridgement disapproved in *Buckley*. In *NAACP v. Alabama*, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958), the Court addressed precisely that question. Alabama sought to compel disclosure by the NAACP, a New York corporation, of the names and addresses of all of its Alabama members and agents. Alabama was seeking to enforce a statute requiring registration of foreign corporations. After noting the First Amendment's protection of free association, the court stated that statutes not directly aimed at speech may nonetheless implicate First Amendment concerns: "abridgement of [First Amendment] rights, even though unintended, may inevitably follow from varied forms of governmental action." *Id.* at 461, 78 S.Ct. at 1171. The Court proceeded to discuss the abridgement which disclosure of names and addresses might cause:

It is hardly a novel perception that compelled disclosure of affiliation with groups engaged in advocacy may constitute as effective a restraint on freedom of association as the forms of government action in the cases above [discussing indirect abridgements of indispensable liberties] . . . . This Court has recognized the vital relationship between freedom of association and privacy in one's

8. *Buckley*, of course, is only relevant for its analytical framework. The discussion of that decision does not indicate that the Court has

any opinion on the constitutionality of the provisions of the Act which FFKC wishes to challenge. See section III B *infra*.

association. . . . Inviolability of privacy in group association may in many circumstances be indispensable to preservation of freedom of association, particularly where the group espouses dissident beliefs.

*Id.* at 462, 78 S.Ct. 1171–72 (citations omitted). Balancing these principles against Alabama's interest in obtaining disclosure, the Court concluded that the subpoena could not be enforced.

The applicability of this case to the present subpoena must be carefully delineated. It stands, first, for the proposition that an objection such as that raised by the FFKC has constitutional merit. The mere investigation of a political association may be constitutionally impermissible. The objections raised against the FEC subpoena are not frivolous and cannot be dismissed outright. *Cf. Oklahoma Press Publishing Co. v. Walling*, 327 U.S. 186, 66 S.Ct. 494, 90 L.Ed. 614 (1946). Second, *NAACP* indicates that a careful balancing must be performed in order to reconcile First Amendment and governmental interests. That proposition must guide the court's establishment of procedures: sufficient facts and legal arguments must be brought before the court to enable it to perform the necessary balance. But precisely because such a balance is necessary, *NAACP* cannot, at this preliminary stage, be used to indicate anything about the propriety of the FEC subpoena. The government's interest has not yet been articulated, and the distinctions between *NAACP* and this case are apparent.[9] Only when these matters are more fully developed may the conflicting interests be resolved. *NAACP* teaches merely that there are conflicting interests.

2) *Procedural Effect of a First Amendment Claim.*

The discussion above indicates that claims arising under the constitution must be

treated with thoroughness and care. The public interest in the preservation of constitutional liberties requires judicial scrutiny of governmental activities impinging on fundamental freedoms. This principle has received explicit recognition in the First Amendment context.

Strict procedural safeguards have been required whenever a possibility of First Amendment restraint exists. *See National Socialist Party of America v. Village of Skokie*, 432 U.S. 43, 44, 97 S.Ct. 2205, 2206, 53 L.Ed.2d 96 (1977). For example, in *Freedman v. Maryland*, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965), the State's censorship procedure failed "to provide adequate safeguards against undue inhibition of protected expression" when it allowed prohibition of film showings without judicial review of their obscenity. *Id.* at 60, 85 S.Ct. at 740. The court held that "only a judicial determination in an adversary proceeding ensures the necessary sensitivity to freedom of expression." *Id.* at 58, 85 S.Ct. at 739. While the distinctions between *Freedman* and the present case are apparent,[10] it nonetheless stands for the proposition that government activities impinging on First Amendment freedoms must be subjected to procedures designed to protect the individual rights involved. *See Vance v. Universal Amusement Co., Inc.*, —— U.S. ——, —— & n.12, 100 S.Ct. 1156, 1161 & n. 12, 63 L.Ed.2d 413 (1980). The procedural requests of the FFKC must be analyzed against this background.

B. *Collateral Questions.*

By way of counterclaim, the FFKC seeks to interpose two claims for relief:[11] the court should rule that the FFKC is not a "political committee" within the meaning of the Act; the court should declare that the contribution and expenditure limitations of the Act would be unconstitutional if applied

---

**9.** In *NAACP*, petitioners made an uncontroverted showing that past disclosures of its membership had caused economic reprisals, losses of employment, and threats of physical coercion. 357 U.S. at 462–63, 78 S.Ct. at 1172.

**10.** A judicial determination is desired by both parties in the present case.

**11.** A third counterclaim, seeking an injunction against the FEC to prevent it from investigating the FFKC, is discussed in section IV B, *infra.*

to the FFKC. These claims are sought to be raised in two ways. First, as affirmative defenses to the subpoena: the argument asserts that because the FEC could never have authority to regulate the activities of the FFKC, it should not be allowed to investigate it. Second, by way of raising a constitutional challenge to the act which, solely for purposes of judicial economy, assertedly should be tried in this proceeding.

### 1. *Affirmative Defenses.*

The Act provides the FEC with power "to require by subpoena . . . evidence relating to the execution of its duties." 2 U.S.C. § 437d(a)(3). Clearly the subpoena here is directed toward uncovering potential violations of a statute which the Commission is empowered to enforce. *See* 2 U.S.C. § 437d(a)(6) (Commission has power to initiate actions to enforce the Act). It seeks to determine whether a group of committees were affiliated, see n.2 *supra*, and therefore whether they violated reporting and contribution requirements.

The FFKC argues, however, that the Act does not apply to a "draft" committee such as itself, and that the investigation of it cannot therefore be within the Commission's "duties." This argument rests on whether the FFKC is a "political committee" within the meaning of the Act. *See* 2 U.S.C. § 431(d) (political committee defined). The requirements of the Act apply primarily to "political committees." *See, e. g.* 2 U.S.C. §§ 432–434, 441a.

FFKC notes that the term "political committee" has been subjected to judicial interpretation. In summary, their argument is that a political committee can only be a group whose major purpose is the nomination or election of a candidate.[12] Only when a candidate is involved, it is argued, does the government's interest in preventing corruption become strong enough that the Act's regulations can stand. *Cf. Buckley v. Valeo*, 424 U.S. at 25–29, 96 S.Ct. at

638–40 (Prevention of corruption articulated as Act's purpose). The FFKC argues that it was involved only in attempting to persuade Senator Kennedy to become a candidate, not in advancing his candidacy. It notes that the Senator publicly disavowed the activities of the Committee, and that the Committee dissolved once the Senator announced his intention to run.

In essence, FFKC argues that coverage of it by the Act must be determined before an investigation can proceed. The apparent flaw with this argument is that it rests on a question of fact, and facts are precisely what the subpoena seeks. The court could not, merely on the basis of the FFKC assertions, definitively hold that Senator Kennedy was never a "candidate" until his public announcement. Nor could it hold that the activities of the various draft committees were efforts solely to convince the Senator to run, rather than help elect him. These issues would require a factual investigation very much along the lines which the Commission proposes to follow.

In any event, the Committee's argument has long since been rejected. In *Oklahoma Press*, the court addressed precisely the question raised here: whether coverage by an act had to be shown before an investigation under that Act could proceed. *See* 327 U.S. at 190–191, 66 S.Ct. at 496. The court held, first, that the power to investigate an organization to determine whether it is covered by an act was a necessary implication of the power to investigate violation. *Id.* at 210, 66 S.Ct. at 506. Second, it held that precedent led to the conclusion that lack of coverage was not an appropriate defense to subpoena enforcement. *Id.* at 212, 66 S.Ct. at 507. Third, the court stated:

[P]etitioner's view if accepted would stop much if not all of investigation in the public interest at the threshold of inquiry . . . . . This would render substantially impossible [the Agency's] effective dis-

---

12. The authorities appear generally to support this proposition. *See generally Buckley v. Valeo*, 424 U.S. at 79, 96 S.Ct. at 663; *United States v. National Committee for Impeach-*

*ment*, 469 F.2d 1135, 1141 (2d Cir. 1972); *American Civil Liberties Union, Inc. v. Jennings*, 366 F.Supp. 1041, 1057 (D.D.C.1973).

charge of the duties of investigation which the Congress has placed upon [it]. *Id.* at 213, 66 S.Ct. at 508.

This analysis is equally applicable here. To prevent the Commission from subpoenaing an organization until it had proven the organization was a "political committee" would prevent the Commission ever from investigating an organization to determine whether it *was* a "political committee." Accordingly, the Commission would be able to investigate only those organizations which were inescapably political or which acquiesced in the investigation. The guidelines of the act would then be easily circumvented, for it is precisely when the nature of an organization is unclear that the possibility of abuse exists.

Nothing about the uniqueness of this case requires a different result. True, the First Amendment may not allow application of the Act to a draft committee. *See* n.12 *supra.* But that issue need not be litigated now. Enforcement actions are, of necessity, ones which must be expeditious. *See Hannah v. Larche*, 363 U.S. 420, 80 S.Ct. 1502, 4 L.Ed.2d 1307 (1960). Only the potential infringement of rights worked by the subpoena need be litigated.

It should be noted that allowing litigation of this issue in an enforcement proceeding would substantially delay the investigation. *See id.* This matter is discussed more fully below.[13]

■ The court has concluded that questions of the Act's coverage [14] are inappropriate in a summary enforcement proceeding, and therefore do not bear on the procedures to be followed.

### 2. *Constitutional Challenges to the Act.*

The act provides a special procedure by which constitutional challenges to it may be raised, and the FFKC seeks to take advantage of that here. Section 437h(a) of Title 2 states that:

> The Commission, the national committee of any political party, or any individual eligible to vote in any election for the office of President may institute such actions in the appropriate district court of the United States, including actions for declaratory judgment, as may be appropriate to construe the constitutionality of any provision of the Act.

Apparently because this provision does not provide the FFKC with a cause of action, several members of the Committee, all eligible voters, seek leave to intervene. They seek a declaration that the Act cannot constitutionally cover "draft committees." [15] They argue that judicial economy requires this claim to be heard in the enforcement proceeding. The rights of these individuals generally to intervene in the enforcement phase of the action will be discussed below; [16] here the concern is only with their right to intervene for the purpose of raising a constitutional challenge to the Act's coverage.

■ An individual has the right to intervene in an enforcement action when he has a "significant protectable interest" in the matter to be litigated. *Donaldson v. United States*, 400 U.S. at 527–31, 91 S.Ct. at 540–43. In *Donaldson*, the taxpayer was denied the right to intervene when his only possible interest was his own tax liability. That was not an appropriate issue for an enforcement proceeding. By seeking to intervene in the enforcement action for the purpose of raising a constitutional question of the Act's coverage, the intervenors have asserted an interest which, as the discussion in the preceding section indicates, is not appropriate for an enforcement action. Their constitutional challenge can therefore only be heard if considerations of judicial economy prevail.

---

**13.** See text accompanying notes 18 to 21 *infra.*

**14.** This conclusion applies equally to questions involving statutory construction and constitutional limitation.

**15.** Section 437h(a) only creates a cause of action for constitutional claims. Accordingly

only the constitutional claim of the applicants for intervention is considered here. Questions of statutory construction were disposed above. See note 14 and accompanying text *supra.*

**16.** See section IV C *infra.*

FFKC argues that they intend to challenge the constitutional boundaries of the Act's coverage regardless whether their claim is heard as part of this suit. A separate suit, it is alleged, "would be unduly expensive and waste judicial resources."[17]

This argument is essentially the same as one which would be raised in favor of consolidating separate cases pursuant to Federal Rule of Civil Procedure 42(a). That rule and the cases discussing consolidation provide an analytical framework for discussing FFKC's request.

Rule 42(a) allows for joint proceedings whenever two or more actions "involv[e] a common question of law or fact." The purpose of the rule is to "give the court broad discretion to decide how cases on its docket are to be tried so that the business of the court may be dispatched with expedition and economy while providing justice to the parties." C. Wright & A. Miller, Federal Practice and Procedure: Civil § 2383 at 253 (1971); *accord Shumate & Co., Inc. v. National Assoc. of Sec. Dealers, Inc.*, 509 F.2d 147, 155 (5th Cir. 1975) (consolidation within court's discretion). The first issue is therefore whether the separate suit FFKC alleges it will maintain presents any question of law or fact common to the present enforcement proceeding.

FFKC's constitutional claim would require resolution of two issues: (1) whether the Act can constitutionally cover a "draft" committee, (2) whether the FFKC is a "draft" committee. As should by now be abundantly clear, neither of these issues is raised by the present action. The constitutionality of the Act's scope is an inappropriate subject in a summary action; characterization of the FFKC as a "draft" committee involves precisely the inquiry the FEC seeks. Here the court need only address the legality of the subpoena, and factual questions regarding its First Amendment implications. There is no judicial economy in consolidating cases involving wholly different matters.

Even if some economy were found in allowing FFKC's claim,[18] other considerations militate against hearing it. Judicial economy must be balanced against the "inconvenience, delay, or expense" which a consolidation would cause. *Vaccaro v. Moore-McCormack Lines, Inc.*, 64 F.R.D. 395, 397 (S.D.N.Y.1974) (consolidation of three separate suits involving a single incident granted); *accord Madigan, Inc. v. Goodman*, 57 F.R.D. 512, 515 (N.D.Ill.1972) (consolidation granted upon failure of opposing parties to demonstrate more than slight hardship); *Continental Bank & Trust Co. v. Ol. s. E.D. Platzer*, 304 F.Supp. 228, 229–30 (S.D.Tex.1969) (consolidation denied because judicial economy would not outweigh confusion caused by consolidated trial of cases involving ship's mortgage and affreightment contract). The interposition of FFKC's constitutional claim would cause monumental delay in the enforcement action.

Section 437h(a) of the Act provides that upon the filing of a constitutional challenge

The district court immediately shall certify all questions of constitutionality of this Act to the United States court of appeals for the circuit involved, which shall hear the matter sitting en banc.

This procedure may require certification of the entire case of the circuit court,[19] or a stay of the investigation pending resolution of the constitutional claim.[20] In either event, the investigation will almost certainly be delayed for a year. *Compare Buckley*

---

17. Ordinarily, judicial economy would best be served by refusing to hear a constitutional challenge to the Act prior to an attempt to enforce it. *Cf. Reisman v. Caplin*, 375 U.S. 440, 84 S.Ct. 508, 11 L.Ed.2d 459 (1964) (refusal, for want of equity, to allow pre-enforcement injunction against subpoena). But section 437h(a) allows pre-enforcement challenges.

18. "Actions involving the same parties are apt candidates for consolidation." C. Wright & A.

Miller, Federal Practice and Procedure: Civil § 2384 (1969).

19. *See Buckley v. Valeo*, 519 F.2d 817, 819 (D.C.Cir.1975) (Bazelon, C. J., dissenting).

20. The committee would seek to enjoin the subpoena pending outcome of the constitutional question. See section IV D *infra*.

*v. Valeo*, 387 F.Supp. 135 (D.D.C.1975) (initial certification of constitutional questions on January 24, 1975) *with Buckley v. Valeo*, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976) (constitutional questions decided on January 30, 1976). Such a delay cannot be permitted in an enforcement action. *See Hannah v. Larche*, 363 U.S. 420, 80 S.Ct. 1502, 4 L.Ed.2d 1307 (1960).

■ The court concludes that the FFKC has no right to raise its constitutional claim in an enforcement action, and that, upon consideration of the factors discussed above, the circumstances are inappropriate for a discretionary consolidation.

## IV. PROCEDURES.

■ The determination of the manner in which this action should proceed has been considerably simplified by the discussion above. This is an enforcement action, nothing more. Many of the requested procedures seem to have been designed to bring before this court issues which have now been rejected. All that remains is to strike a balance between the FEC's need for speedy investigation and the FFKC's First Amendment rights. Despite the great weight accorded those First Amendment claims, it appears that little alteration in standard summary proceedings is appropriate.

### A. Answer.

The answer contemplated by the Federal Rules of Civil Procedure is a rather simple document. Rule 8(b) states that "A party shall state in short and plain terms his defenses to each claim asserted upon which the adverse party relies." A party must also set forth his affirmative defenses. Rule 8(c). All pleadings are to be "simple, concise, and direct." Rule 8(e)(1). Generally, the purpose of answers is to notify oppo-

nents of the nature of the issues, clarify the factual disputes, narrow the issues, and provide a means of properly disposing of sham claims. *See* C. Wright & A. Miller, Federal Practice and Procedure: Civil § 1202 at 59–60 (1969); *id.* § 1261 at 264.[21]

The value of an answer in a summary proceeding is evident. The parties agree that such proceedings should progress expeditiously. Clearly an answer, by narrowing the issues and articulating FFKC's position, would help achieve this result.

The normal time in which an answer should be served is 20 days. Fed.R.Civ.Pro. 12(a). This time may be altered by court order. *Id.* In the present case, FFKC has stated its willingness to abide by strict deadlines. Given that FFKC has already prepared numerous pleadings articulating its position, little time would be necessary for the preparation of an answer. Hence, an answer would provide a clarification of the issues awaiting judicial resolution while causing only minimal delay.

An answer would address matters relevant to subpoena enforcement. FEC admits that certain matters must be resolved in enforcement proceedings. *See United States v. Morton Salt Co.*, 338 U.S. 632, 70 S.Ct. 357, 94 L.Ed. 401 (1950). Whenever there are matters to be litigated, an answer will be useful and relevant.

No case has expressly discussed the propriety of answers in enforcement proceedings. The assumption appears to have been, however, that answers are routine. The Supreme Court has stated that the normal procedure in agency subpoena enforcement actions includes filing a complaint,[22] followed by an answer and a hearing. *United States v. Powell*, 379 U.S. 48, 58 n.18, 85 S.Ct. 248, 255 n.18, 13 L.Ed.2d 112 (1964). While this statement has been

21. Wright and Miller argue that pleadings under the Federal Rules have a more narrow purpose: to notify opponents of the nature of a claim. This analysis, however, is dependent on the more efficient means provided for limiting and disposing of issues—for example, broad discovery and motions for summary judgment. Because these other provisions of the Rules are

not normally available in summary proceedings, *see, e. g.*, section IV D *infra*, the answer serves a greater clarifying role.

22. The effect of this statement is not altered by the fact that this case was initiated by a petition. *See Wild v. United States*, 362 F.2d 206, 209 (9th Cir. 1966).

modified to provide for discretion in applying the Federal Rules to enforcement actions, *Donaldson v. United States*, 400 U.S. at 528, 91 S.Ct. at 541, the assumption that an answer is appropriate has not been challenged. Indeed, answers have been filed in numerous cases. *See, e. g., United States v. Wright Motor Co., Inc.*, 536 F.2d 1090, 1092 (5th Cir. 1976); *United States v. Newman*, 441 F.2d 165, 167 (5th Cir. 1971). Nowhere has that procedural step given rise to question or comment; nowhere has any showing of need been required for it. Indeed, the filing of an answer in an enforcement proceeding has been referred to as conforming to the "traditional pattern under the Civil Rules." *United States v. Newman*, 441 F.2d at 167.

In summary, the court finds that an answer would serve to clarify issues in this case and, given a time limit on its filing, would not cause delay. Moreover, providing an opportunity to respond to a petition by way of an answer appears to be common. Accordingly, the respondents are granted leave to file an answer within ten days of the date of this order.

### B. *Counterclaim.*

The respondent's proposed counterclaim contains three requests for relief. Two of these were rejected above on the ground that they raised issues inappropriate for an enforcement proceeding.[23] The remaining claim requests that the Court enjoin the FEC from "seeking the identities, political affiliations, travel and telephone records, and correspondence of the persons who participated in the efforts of the Florida for Kennedy Committee." The apparent intent of this request is to have the court rule on not only the present subpoena, but on all future possible Commission subpoenas or orders.[24]

Such a future attempt might arise in two contexts: a subpoena could be directed to the FFKC, or to some third party for information concerning the FFKC. The case law is clear that the time for objecting to such an attempt is at the time it is made.

Attempts to enjoin subpoenas prior to their enforcement have been routinely denied. In *Atlantic Richfield Co. v. FTC*, 546 F.2d 646 (5th Cir. 1977), the plaintiff sought to enjoin enforcement of subpoenas duces tecum. The court denied relief on standard equity grounds. An adequate remedy at law was provided by the opportunity to object to the subpoenas in the course of enforcement proceedings. No undue hardship in following that procedure was shown. *Id.* at 648–49. The court also concluded that the matter was not ripe for review. *Id.* at 650 (citing *Toilet Goods Assoc. v. Gardner*, 387 U.S. 158, 162, 87 S.Ct. 1520, 1523, 18 L.Ed.2d 697 (1967)). This analysis applies with even greater force when, as here, the subpoena to be enjoined does not even exist.

FFKC would have an equal opportunity to object to any information request directed to a third party. Should a subpoena directed at another party proceed to an enforcement action, FFKC would have the opportunity to intervene on appropriate grounds. *Donaldson v. United States*, 400 U.S. at 542, 91 S.Ct. at 542. Moreover, FFKC's rights to intervene and object may be exercised even when the subpoenaed third party intends to voluntarily comply. A party with a right to intervene under *Donaldson* may also intervene in the agency proceeding. *Reisman v. Caplin*, 375 U.S. at 445, 84 S.Ct. at 511–12.

To the extent it seeks to enjoin enforcement of the present subpoena, the counterclaim is no more than an objection to enforcement. As such, it states no claims, and raises no issues, in addition to those which the court must address. Accordingly, the request to file a counterclaim is granted to the extent that it seeks to enjoin enforcement of the subpoena in question, and is otherwise denied.

---

23. See section III B *supra.*

24. The intent was also clearly to enjoin the investigation while constitutional questions were resolved by higher courts. See note 20 and accompanying text *supra.*

## C. Intervention.

Three members of the FFKC seek to intervene in this action as respondents/counterplaintiffs. Their purpose in doing so is to join in the counterclaim. Most of the arguments which the counterclaim would raise have been held inappropriate for an enforcement action; the presence of an intervenor would not alter that analysis. Hence, the only issue left for determination is whether intervention should be allowed on that aspect of the counterclaim which would enjoin the subpoena.

Persons claiming a significantly protectable interest in a subpoena enforcement action should be allowed to intervene. *Donaldson v. United States*, 400 U.S. at 530–31, 91 S.Ct. at 542. This right derives from Federal Rule of Civil Procedure 24(a)(2). The right which members of FFKC would assert in opposition to the subpoena is clearly one which is significant and protectable. The First Amendment claims discussed above deal with the freedom of these individuals to associate. See section III A 1 *supra.* They have a right to intervene.

Intervention under Rule 24(a)(2) may be denied, however, when "the applicant's interest is adequately represented by existing parties." *See Republican National Committee v . Federal Election Commission*, 461 F.Supp. 570, 577–78 (S.D.N.Y.1978). Although adequacy of representation has been described as a "very complex variable," Shapiro, *Some Thoughts on Intervention Before Courts, Agencies, and Arbitrators*, 81 Harv.L.Rev. 721, 748 (1968) the relationship of the applicants to FFKC makes this an easy case. The Fifth Circuit has stated that

> When the party seeking intervention has the same ultimate objective as a party to the suit, a presumption arises that its interests are adequately represented, against which the [applicant] must demonstrate adversity of interest, collusion, or nonfeasance.

*International Tank Terminals, Ltd. v. M/V Acadia Forest*, 579 F.2d 964, 967 (1978) (*quoting Commonwealth of Virginia v. Westinghouse Electric Corp.*, 542 F.2d 214, 216 (4th Cir. 1976)).

Clearly a presumption of adequate representation is appropriate in this case, where the applicants seek to raise the same claims as the FFKC. That presumption is buttressed by two factors. First, the applicants are represented by the same law firm as FFKC; in fact their application is made as part of the submission made by FFKC. Second, they seek only to join in the counterclaim and memorandum which FFKC will submit. In these circumstances, intervention is unnecessary, and would serve only to complicate this enforcement action.

## D. Application for Injunction and Memorandum in Support Thereof.

The request to file an applicant for injunction has been obviated by the sections above. The sample pleadings attached to the FFKC memorandum indicate that the original purpose of such an application would have been to stay the investigation pending resolution of FFKC's constitutional claims. Because those claims have been disallowed, no stay is necessary. The propriety of the subpoena will be decided in this action. Limited permission to file a counterclaim has been granted, see section III B *supra*, and permission to apply for injunction is granted to that extent.

FFKC has also requested the opportunity to file a memorandum supporting its position regarding the subpoena. The objections FFKC seeks to raise are of great importance, and the judgments facing this court are delicate. A memorandum articulating the objections would greatly aid the fair resolution of this case. Given an expedited schedule, this articulation can be provided without substantially interfering with the Commission's investigation.

## E. Discovery: Interrogatories and Requests for Admission.

The normal scope of discovery is quite broad. "Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending matter . . . ." Fed.R.Civ. Pro. 26(b). The Fifth Circuit has firmly

held that "the discovery procedures in the Federal Rules of Civil Procedure apply in summary proceedings to enforce [agency] summonses." *United States v. Garrett*, 571 F.2d 1323, 1330 (1978) (IRS summons); *see FTC v. Kujawski*, 298 F.Supp. 1288 (N.D. Ga.1969) (FTC subpoena).

It is equally true, however, that the latitude for discovery in enforcement proceedings is more limited than that permitted in other civil cases.[25] The rationale for this limitation is apparent from the discussion above. Few issues are truly relevant to enforcement proceedings, and "unlimited discovery in a summons enforcement proceeding would place the [agency] under a severe handicap in conducting a civil investigation, because it has the potential to cause delays which would jeopardize the integrity and effectiveness of the entire investigation." *United States v. Garrett*, 571 F.2d at 1327 (footnote omitted). With this guidance in mind, the issue presented is whether the discovery sought by FFKC is relevant to any issue in this proceeding.

FFKC seeks answers to ten interrogatories and requests for admission. Eight of those questions relate only to the coverage of the committee by the Act,[26] an issue which is irrelevant to the current proceeding. Accordingly, the request for leave to conduct discovery is denied as to those first eight questions. The other two questions contain somewhat different requests.

Interrogatory 9 requests that the FEC "state the reasons for the investigation." The purpose of an investigation would only be relevant to this action if it was alleged to be improper. Such challenges have often led to discovery in the past. For example, the court in *United States v. Wright Motor Co., Inc.*, articulated the "principle that when a taxpayer alleges in a responsive pleading that the material sought by the IRS is to be used solely for a criminal prosecution, or that the IRS is engaged upon a course of personal harassment, the taxpayer is entitled to investigate the IRS' purposes." 536 F.2d at 1094. To permit discovery on this ground, however, there must be at least allegations of an improper purpose,[27] and there are none here. FFKC

25. *United States v. Garrett*, 571 F.2d at 1326–27; *see United States v. Wright Motor Co., Inc.*, 536 F.2d 1090 (5th Cir. 1976); *United States v. Newman*, 441 F.2d 165 (5th Cir. 1971); *United States v. Roundtree*, 420 F.2d 845 (5th Cir. 1969).

26. The first eight interrogatories and requests for admission are as follows:

1. Please admit that an association of persons which acts to attempt to convince a person to seek nomination or election to federal office is not a "political committee" as that term is defined in the Federal Election Campaign Act, 2 U.S.C. § 431(d).
2. If your response to the above request for admission is negative please specifically describe your theory under which such an association constitutes a "political committee" as that term is defined in the Act.
3. Please admit that the reporting requirements concerning affiliation contained in 2 U.S.C. § 433(b)(2), and the contribution limitations upon such affiliated committees contained in 2 *U.S.C.* §§ 441a(a)(2)(C) and 441a(f) apply only to "political committees" as that term is defined in the Act.
4. Please admit that if the Florida for Kennedy Committee is not a "political committee" as that term is defined in the Federal Election Campaign Act that it cannot have violated Sections 441a(a)(2)(C) and 441a(f)

as alleged in the complaint and which the Commission found reason to believe may have been violated in its letter dated October 19, 1979 (attached).
5. If your answer to the above Request for Admission is negative, please specifically describe how an association of persons which is not a "political committee" as described by the Act can violate the above cited sections.
6. Please admit that the Florida for Kennedy Committee is an association which was formed for the purpose of convincing a person to seek nomination or election to federal office. *See, Advisory Opinion of Federal Election Commission 1979–40* (Attached).
7. Please admit that the Florida for Kennedy Committee is not a "political committee" as that term is defined in the Federal Election Campaign Act, 2 U.S.C. § 431(d).
8. If your answer to the above request is negative, please describe the reasons you believe that the Florida for Kennedy Committee may be considered a "political committee" as defined by the Act.

27. In *United States v. Newman*, 441 F.2d 165 (5th Cir. 1971), discovery was denied when the taxpayer failed

even in the most conclusory terms . . . [to charge] that there was an improper purpose behind the summons, that there was

has filed several different documents, traversing all the objections they intend to make, and none alleges an improper purpose. Moreover, even were such an allegation made, it would not be sufficient in this case. The petition by the FEC clearly sets forth the cause of the investigation: the filing of a complaint and a determination that there was "reason to believe" that a violation had occurred. In these circumstances, discovery can only cause delay.

The Fifth Circuit has accepted an alternative procedure, even where the need for discovery seems indicated. The district court may proceed directly to a hearing at which inquiry into purpose may be made, and at which time the court may determine if further discovery is needed. *See United States v. Garrett*, 571 F.2d at 1327 (*quoting United States v. Wright Motor Co.*, 536 F.2d at 1095). Should any need for discovery arise after the issuance of this order, such a procedure will suffice.

Similarly, interrogatory 10 may be addressed during the hearing in this matter. It asks that FEC state the relevance of its inquiry. In effect, this is an attempt to require the Commission to place in writing the legal arguments it will make at the hearing. It is not an attempt to obtain evidence or facts, and is therefore probably not discoverable. In any event, it raises only matters which will be fully addressed at the hearing.

## V. *CONCLUSION*.

The role of a court is clearly to stand between the individual on the one hand and the executive and legislature on the other. Actions by the government which touch on fundamental freedoms will always receive close scrutiny. The present case involves a government attempt to obtain information which, it is alleged, cannot withstand this court's examination. But the threat to individual liberties, and accordingly the call

upon this court to act, ends there. The other matters raised by the Florida for Kennedy Committee, while substantial and deserving of a federal forum,[28] are not appropriately before this Court.

The individual liberties underlying this case are an important part of our constitution and system of government. To review an alleged threat to them with anything but the closest of scrutiny would undermine those freedoms. The court will consider fully and deliberately those matters appropriately before it, and the procedures set forth in this case are designed to effect that result.

Accordingly, it is

ORDERED AND ADJUDGED that respondents shall have 10 days from the date of this order to answer the petition of the Federal Election Commission. It is further

ORDERED AND ADJUDGED that respondents shall have 20 days from the date of this order to file memoranda in support of their position. It is further

ORDERED AND ADJUDGED that the petitioner shall have 20 days from the filing of respondent's memoranda to respond.

---

any harassment, that there was no lack of good faith, or that the summons was overreaching or vague.
*Id.* at 170.

**28.** The court makes this statement solely on the basis of section 437h(a), and expresses no

opinion as to whether respondent's claims are in fact presently cognizable. *See Buckley v. Valeo*, 424 U.S. at 143 n.178, 96 S.Ct. 693–94 n.178 (noting lack of ripeness of certain certified questions).